CHIEF JUSTICE PETERS
delivered the opinion oe the court;
At the May term, 1865, of the Harrison circuit court, the appellant was indicted for unlawfully (but not with a felonious intention) taking and carrying away from the possession of one L. Oxley one negro woman, named Mariah, and her three children, of whom said Oxley was then the owner, of the alleged value of one thousand dollars, in violation of section 7, article 25, chapter 28, 1st volume Revised Statutes, 411, which section is in the following language: “ If any person unlawfully, but not with felonious intention, take, carry away, deface, destroy, or injure any property, real or personal, or other thing of value, not his own, or willfully and knowingly, without a felonious intention, break down, destroy, injure, or remove any monument erected to designate the boundaries of this State, or any county, city, or town thereof, or the boundaries of any tract or lot of land, or any tree marked, or post or stone planted for that purpose, he shall be fined not less than ten nor more than two hundred dollars.”
By proper averments and specifications the indictment charges the appellant with having taken the slaves, Mariah and her three children, from the possession of Oxley, their owner, and removing them to Covington, whereby they were lost to him.
On the trial, Oxley proved that the appellant came to his residence in July, 1864, and said he was directed to take Mariah and her children to the headquarters of the provost, marshal of the district, in Covington, and read *36 what purported to be a letter from E. H. Samuel, provost marshal of the sixth district of Kentucky, directing said slaves to be sent to Covington, Kentucky; he furthermore proved that appellant, on the. next morning, came to his house, bringing an armed soldier with him, and demanded Mariah and her children; and that either Jones or the soldier went near to where the negroes were, who then, came to them, and they went in company with the negroes to the Kentucky Central railroad, and were put on boai’d and sent in company with the soldier to Covington. That he, Oxley, went on the same train to Covington with a letter to Samuel, to try to get the negroes; but Samuel refused to let him have them. Jones, as the witness stated, did not pretend to act upon his own authority, but in obedience to the order of Samuel ; that there was a military force stationed at the time at Cynthiana sufficient to enforce said order, and that Jones seemed ready and willing to execute it; and that the negroes were then his slaves, and worth, in his opinion, one thousand dollars. The woman Mariah was obedient and quiet, and not inclined to leave home if she had not been induced to do so.
Ward proved that, on the morning the negroes were taken from Oxley, he went with him to Jones, and requested him not to send them on the first train to Covington, because he wished to communicate with General Burbridge, and get the order countermanded; but he refused to wait for General Burbridge to be telegraphed, saying that his orders were peremptory. Oxley offered to execute bond with surety that he would not send the negroes outside of the Federal lines, and said to Jones he had no intention of removing them; and Jones replied that he did not believe he had any such intention; but declined to take the proffered bond, or to wait until *37 General Burbridge could be telegraphed and a reply received.
Jones introduced evidence to the effect that, in July, T864, such negroes as Mariah and children were of little marketable value in Cynthiana; that such a negro as Mariah, if not inclined to leave her master, was of considerable value to him; that slavery then in that part of Kentucky was nearly destroyed. The presence of United States troops, the recruiting of negroes into the army, and the illegal acts of persons such as Jones, had so demoralized the negroes that they were of little value.
Oxley proved that the letter marked “A,” from Samuel to Jones, dated 28th of July, 1864, was the same which was read to him by Jones when he told him he was ordered to take the negroes to Covington, and then offered to read said letter as evidence to the jury, to which the attorney for the Commonwealth objected; his objections were sustained, and appellant excepted. He also offered to read a letter from Henry A. Mitchell .to him, dated 30th of June, 1864, marked “ Balso a letter dated September 29th, 1864, from same to same, marked “ Calso letter marked “ 2),” from same to same, dated October 22d, 1864; and letter marked “2?,” from same to same, dated October 25th, 1864; all of which letters the court refused to permit him to read to the jury, having been objected to by appellee’s attorney, and Jones excepted.
A verdict and judgment for two hundred dollars were rendered against Jones, which he now seeks to reverse on the grounds — 1st. That the instructions to the jury, given at the instance of appellee, were erroneous; 2d. That the court erred in refusing to instruct the jury as asked by appellant; 3d. Because the court refused to admit evidence offered by appellant which was competent and *38 proper; and 4th. Because the indictment does not charge any offense to have been committed before the finding thereof.
It is satisfactorily shown by the evidence that the' slaves of Oxley were forcibly taken by appellant from his possession, and sent by him, against the will of Oxley, to the city of Covington, whereby he lost their services; and unless appellant has shown, or offered to show, sufficient legal grounds for so doing, he subjected himself to the penalty prescribed by the statute before herein recited.
The first question presented for determination is, whether the court below erred in rejecting the several letters, before referred to, offered in evidence by appellant to show that he had been, and was, at the time of taking said slaves, provost marshal for the county of Harrison, appointed by the provost marshal of the sixth district of Kentucky, of which district Harrison county formed a part; and, in taking said slaves and sending them to Covington, he acted under*, and in obedience to, the order of E. H. Samuel, provost marshal for said sixth district at the time.
If the facts which the rejected letters were offered to establish furnished a legal justification for taking and carrying away said slaves, then the letters, if proved to be genuine, were improperly rejected, and appellant prejudiced thereby.
There is no evidence, nor was any offered, to show that Oxley had, by any thing he had said or done, manifested any intention to send said slaves beyond the reach of the Federal authorities, or even from home, and no evidence of a rumor of such intention, except the statement contained in Samuel’s letter to appellant, under date the 28th of July, 1864, which appellant did not believe, as shown by Ward’s evidence, so that the act cannot be jus *39 tilled upon the ground that they were about to be sent within the lines of the enemy.
Nor do the rejected letters prove, or tend to prove, that there was an urgent necessity to take said slaves for the public service, or that it was necessary to take them into possession of appellant or Samuel to prevent them from falling into the hands of the enemy.
In Mitchell vs. Harmony (13 How., 128), the supreme court of the United States said: “ There are, without doubt, occasions in which private property may lawfully be taken possession of, or destroyed, to prevent it from falling into the hands of the public enemy; and also where a military officer, charged with a particular duty, may impress private property into the public service, or take it for public use. Unquestionably, in such cases, the government is bound to make full compensation to the owner; but the officer is not a trespasser.”
“ But we are clearly of opinion, that, in all these cases, the danger must be immediate and impending, or the necessity urgent for the public service, such as will not admit of delay, and where the action of the civil authority would be too late in providing the means which the occasion calls for. It is impossible to define the particular circumstances of danger or necessity in which this power may be lawfully exercised. Every case must depend on its own circumstances. It is the emergency that gives the right, and the emergency must be shown to exist before the taking can be justified.”
No emergency was shown to exist to authorize Samuel to make the order. But it is said that appellant acted in obedience to his superior officer, and, therefore, is not liable to this prosecution.
That may be disposed of in a few words.
*40 If Samuel had possessed any legal authority to issue the order under which appellant acted, his order would have justified appellant. But we have already seen that he had no discretionary power over private property. The order was to do an act in violation of the statute supra; to commit a trespass upon the property of a private citizen; and can afford no justification to appellant, by whom it was executed. Nor can the presence of a military force relieve him from the consequences of his illegal act. (Mitchell vs. Harmony, Ibid.)
The order of Samuel was without excuse or palliation on his part, so far as this record shows, to deprive Oxley of his property, produced, doubtless, by his opposition to the laws under and by virtue of which Oxley held that property, and affords no defense to appellant against this prosecution.
There was no error, therefore, on the part of the court below, in rejecting the letters offered as evidence by appellant, nor in refusing the instructions asked by him, and in granting those asked by appellee.
Although the indictment states the offense was committed on the — day of July, 1865, and was found at the May term, 1865, of the Harrison circuit court, still it is charged afterwards in the indictment, in express terms, that the offense was committed before the finding of the same, and is sufficient under section 130, Criminal Code.
Wherefore, the judgment is affirmed.