CASE 80—PETITION—OCTOBER 8.

## Ferguson vs. Loar.

APPEAL FROM LAWRENCE CIRCUIT COURT.

1. The Confederate Government, by its claim to Kentucky as one of its family of States, its recognition of a pseudo provisional State government, and its reception of a full delegation from her into its Congress, precluded itself and its officers from regarding Kentucky soil as enemies' country, or treating her non-combatants as enemies. (*Terrill vs. Rankin*, 2 *Bush*, 460; *Lewis, &c., vs. McGuire*, 3 *Bush*, 203.) Yet—

2. As to belligerent citizens of Kentucky, the Confederate Government and its officers had all the belligerent rights as fully as if they resided in States against which it had declared war.

3. The modern law of nations does not justify the seizure or confiscation of enemies' private property and lands, and to justify such an act by a Confederate soldier, an act or rule adopted by the law-making power of the Confederate Government must be shown.

4. The right of impressment is confined within narrow limits, growing out of military emergency, to save an army from impending calamity, and not for the purpose of undertaking an enterprise, expedition, or recruiting service—for none of these purposes can a military officer exercise the power of impressment. (*Mitchell vs. Harmony*, 13 *Howard*, 115.)

5. A soldier belonging to the Confederate command of Colonel Jack May, which was sent into Kentucky to recruit soldiers and mount them, is liable to a citizen of Kentucky, who was then serving in the Federal army, for the value of a mule taken from him, although he is not proved to have converted the mule to his own use.

JAMES A. DAWSON and
G. N. BROWN,                                    For Appellant,

CITED—

2 *Cranch*, 170 ; *Little vs. Barreme.*
13 *Howard*, 504 ; *Mitchell vs. Harmony.*
2 *Duvall*, 504 ; *Christian County vs. Rankin & Tharp.*

Ferguson vs. Loar.

2 *Bush*, 456; *Terrill vs. Rankin.*

1 *Bush*, 357; *Short vs. Wilson.*

1 *Bush*, 355; *Beck vs. Ingram.*

W. M. FULKERSON,                              For Appellee,

CITED—

1 *Duvall*, 232; *Bland vs. Adams Express Company.*

1 *Bush*, 387; *Price, &c., vs. Poynter.*

1 *Bush*, 404; *Bell vs. Louisville & Nashville R. R. Co.*

2 *Black's U. S. Prize Cases*, pp. 666, 695, 295.

*Halleck's Int. Law and Laws of War*, sec. 22, p. 464.

3 *Vattell*, chap. 18, sec. 295.

*Lawrence's Wheaton*, 596; *Ib.* on Amnesty, p. 524.

*President Johnson's Amnesty of* 1868.

1 *Kent*, pp. 97, 98, *and notes to* pp. 99 *and* 100.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellee was a Confederate soldier, and was sent into Kentucky, together with a small detachment of Confederate soldiers, under the command of Col. Jack May, who belonged to Brig. Gen. John S. Williams' command, to recruit soldiers, and mount them; and appellant was an officer in the Federal army at the same time, whose family resided in Floyd county, and where his private personal property was left.

The appellee, a private soldier, took two mules of appellant, private property, one of which was returned, the other probably used in the Confederate army, and turned over to the Confederate Government; but whether so or not, the evidence does not prove that he converted the mule to his own private use.

After the close of the war, appellant sued appellee for the value of this mule. The jury, after hearing the evidence and receiving the court's instructions, found for defendant, which the court refused to disturb, but adjudged accordingly, and the plaintiff seeks a reversal.

Two main questions are involved:

1. By the laws of nations and rules of civilized warfare, uncontrolled by any positive rule enacted by its own government, has one belligerent the right to capture the private property of the other?

2. Did these laws authorize the capture of private property by a small recruiting detachment?

Whilst, as heretofore decided by this court in *Terrill vs. Rankin*, 2 *Bush*, 460, and *Lewis vs. McGuire*, 3 *Bush*, 203, the Confederate Government, by its claim to Kentucky as one of its family of States, its recognition of a pseudo provisional State government, and its reception of a full delegation from her into its Congress, it thereby precluded itself, and all its officers, from regarding Kentucky soil as enemies' country, or treating her non-combatant citizens as enemies; yet as to her belligerent citizens, that government and its officers had all the belligerent rights as fully as if they resided in States against whom it had declared war, and all of whom stand on the same footing as to belligerent rights, whether actually engaged in the war or remaining at home.

Wheaton on International Law, by Lawrence, 532, quoting from and approving the decision of the Supreme Court of the United States in *Brown vs. United States*, 8 *Cranch*, 110, lays it down as the true modern rule, that enemies' property, found in the country on the declaration of war, could not be seized and condemned as prize of war; that the declaration of war did not, by its own operation, so vest the property of the enemy in the government as to support judicial proceedings for its seizure and confiscation: "*it vested only a right to confiscate*, the assertion of which depended on the will of the sovereign power."

At page 538, he says: "It might be considered as the opinion of all who have written on the *jus belli*, that war gives the right to confiscate, but does not itself confiscate the property of the enemy; and the rules laid down by these writers went to the exercise of this right." And in chapter 2, part 4, page 596, devoted to the "Rights of War as between Enemies," he lays it down as the "modern usage of nations, which has now acquired the force of law," that "private property on land is also exempt from confiscation, with the exception of such as may become booty in special cases, when taken from the enemies in the field or in beseiged towns, and of military contributions levied upon the inhabitants of the hostile territory."

And this rule was recognized with high commendation. by this court in *Terrill vs. Rankin*, as well as the same rule so tersely stated in *Halleck's International Law*, that "private property on land is now, as a general rule of war, exempt from *seizure* or confiscation."

As the modern rules of war, as now recognized among the civilized nations of the earth, do not justify the seizure or confiscation of enemies' private property on land, to justify this an act or rule adopted by the law-making power of the Confederate Government must be shown, authorizing this seizure, which was neither pleaded nor proved in this case; and which, as heretofore said by this court, we cannot otherwise judicially know. That the Confederate Government had a right to enact the seizure and confiscation of the private property on land of its belligerent enemies, is fully established by all writers on international law, and it may have done so.

In *Price vs. Poynter* (1 *Bush*, 388), the right of Gen. Morgan's army to take horses, without responsibility,

was predicated upon the military authority, express or implied, from the commander of an army, and for its use, and *not by a small band, for a mere recruiting service;* whilst the wrong, even for such purpose, was denounced; and this court is not willing to extend the belligerent rights of either party further than the enlightened and humane rules now recognized by civilized nations justify, unless an express rule by the government of the belligerent party can be shown to authorize it, especially as this must be done often to the detriment of the peaceable, quiet, non-combatant citizen.

The right of impressment, as heretofore recognized both by the Supreme Court of the United States, in *Mitchel vs. Harmony* (13 *How.*, 115), and by this court, is confined within narrow limits, growing out of the military emergencies to save an army from impending calamity, and not for the purposes of undertaking an enterprise, expedition, or recruiting service; for none of these purposes can a military officer exercise this patent, but ever-to be-continuously-exerted, power of impressment—a power at all times dangerous to the citizen, and subject to great abuse even by military officers of high grade and large command, and the more dangerous in officers of inferior grade, less command, and less responsibility.

The order of General Williams to this small detachment, to proceed to Kentucky to recruit and mount the men, cannot justify such illegal taking under any right of impressment, even if such orders were satisfactorily shown, because such orders themselves would be illegal, and violative of the legal and constitutional rights of the citizen, as decided by this court in *Jones vs. Commonwealth* (1 *Bush*, 40), in which case Jones, being indicted for forcibly taking the slaves of Oxley, he plead-

ed the order of the provost marshal of the district to seize and take said slaves, and have them at his office at headquarters at Covington; and in relation to the legality of said order, and the justification under it, after quoting from the case of *Mitchel vs. Harmony*, to show that to authorize impressment of the private property of the citizen " the danger must be immediate and impending," the court proceeds to say : " But we have already seen that he had no discretionary power over private property. The order was to do an act in violation of the statute; to commit a trespass upon the property of a private citizen, and can afford no justification to appellant, by whom it was executed."

And in *Sellards, &c., vs. Zomes (ante, p. 90)*, in an action of trespass against a Federal officer for taking the horses of a citizen, this court held, that " to excuse the impressment there must not only have been military necessity, but it must have been so imminent as not to allow delay. * * * Private property cannot be taken for public use without just compensation, either in peace or war. In war, pressing emergency may authorize seizure before making or providing for compensation; but to excuse the taking without the owner's consent, the necessity must be apparent and instant —*leaving no legal and available alternative.*" And there is no adjudged case, which we have seen, which authorizes or recognizes the right of even commanders of districts or armies to impress the private property of the citizen for the purpose of recruiting his army or mounting his men.

The right of impressment has been wisely confined within narrow limits by the Supreme Court of the United States; and the humane rules of civilized warfare, as now recognized and observed by civilized na-

tions, have curtailed belligerent rights within rational bounds, until by these the private property of the belligerent soldier is not liable to seizure on land unless a positive enactment by the government of the captor can be shown.

As the instructions of the court were in conflict with these principles, the judgment must be reversed; but on a return, the defendant should be permitted to amend his answer, and set up any statute of the Confederate Government which authorized the seizure and confiscation of enemies' private property upon land.

Wherefore, the judgment is reversed, with directions for further proceedings as herein indicated.