## May v. Commonwealth.

(Decided March 28, 1913.)

### Appeal from Laurel Circuit Court.

1. Indictment—May Charge Commission of Crime in Different Modes.—An indictment may charge the commission of a crime in different modes and in as many counts as the grand jury may deem it necessary to employ; and when the indictment is thus drawn presenting in each count every aspect of the case in which from the evidence before the grand jury, the crime might have been committed, the accused may be convicted upon evidence showing his guilt under any of the counts.

2. Indictment—Time at Which Offense Was Committed—Mistake of Draftsman.—The statement in an indictment as to the time at

which the offense was committed, is not material further than as a statement that it was committed before the time of the finding of the indictment, unless the time be a material ingredient in the offense. The statement made in the indictment that the crime was committed April 17, 1911, when the proof showed it was committed March 5, 1911, was a mere mistake of the draftsman which did not affect the validity of the indictment, as it was alleged that the crime was committed before the finding of the indictment.

3. Criminal Law—Trial—Continuance—When Refusal of Not Reversible Error.—The trial court's refusal of a continuance to the accused on account of the illness of counsel and absence of witnesses, is not a reversible error, when it is apparent from the record on the appeal that by laying the case over from time to time during the term, the accused succeeded in procuring at the trial the presence and assistance of the counsel and attendance of the witnesses, for whose absence the continuance was asked.

4. Homicide—Evidence—Competency of—Admonition of Court.—On the trial of the accused for the murder of Belle Meredith, it was competent for the Commonwealth to prove that at the same time and place and immediately before the killing of Mrs. Meredith, he, also shot and killed her husband, Sherman Meredith. Such evidence was admissible on two grounds. (1) It was so connected with the killing of the wife as to make it a part of the res gestae. (2) It manifested the evil intent or motive for the killing of the wife; and the trial court carefully admonished the jury that its admission was competent for this purpose and no other.

5. Criminal Law—Ruling of Trial Court Excluding Evidence—Will Not Be Reviewed on Appeal.—The rulings of the trial court in excluding evidence will not be reviewed on appeal, in the absence of avowals as to what the excluded evidence was, or would have been.

6. Trial—Presence of Judge at—Absence—Suspension of Trial in Case of Absence.—The trial judge should be present and in his seat at every stage of the trial. But if at any time necessity requires him to leave the court room during a trial, his absence should be as brief as possible; and before quitting the bench or leaving the court room, he should announce his purpose to do so, suspend the trial then in progress, and declare a recess until his return.

7. Trial—Absence of Judge From Court Room—Argument of Counsel During.—Where argument of counsel to the jury is in progress during the temporary absence of the judge from the court room, and upon objection from opposing counsel to some part thereof, counsel making the argument discontinues same until the judge returns to the court room and passes on the objection, such temporary absence of the judge could not have been prejudicial to any substantial right of the accused.

8. Trial—Conduct of Trial Judge During—Motion to Exclude . Re-

mark of Commonwealth's Attorney.—It is error for the trial court in the presence of the jury and in the absence of accused, to pass upon a motion made by his counsel after the submission of the case to the jury to exclude from their consideration a remark made by the Commonwealth's attorney in argument to them, although the motion be properly overruled; but, such error on the part of the judge will not authorize a reversal, unless it is clearly made to appear that some substantial right of the accused was thereby prejudiced.

9. Criminal Law—Appeal—Judgment of Conviction in Felony Case Will Not Be Reversed on Account of Single Absence of Accused During Trial.—The appellate court will not reverse a judgment of conviction in a case of felony, because of a single absence of the accused from court during the progress of the trial, or at the taking of some unimportant step in the case following its submission to the jury, unless, considering the whole record, it is of opinion his substantial rights were prejudiced thereby.

10. New Trial—When Will Not Be Granted.—A new trial will not be granted on the ground of newly discovered evidence, where such evidence could by reasonable diligence have been procured for the trial, or is merely cumulative; and especially is this true, if such evidence will only tend to contradict or impeach a witness whose testimony was given on the trial.

HAZELWOOD & JOHNSON and B. B. GOLDEN for appellant.

JAMES GARNETT, Attorney General, O. S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, General May, was tried, convicted and given the death penalty, under an indictment jointly charging him and others with the murder of Mrs. Bell Meredith. The homicide having occurred in Clay County, the indictment was found and returned by the grand jury of that county at the April term, 1911, of the Clay Circuit Court, but appellant obtained a change of venue to the Laurel Circuit Court, where he was tried during its February term, 1912. The refusal of the lower court to grant him a new trial resulted in this appeal. There were only three eye-witnesses to the homicide. They were Farmer Freeman, said to be a negro, Lloyd Duff and the appellant. The testimony of Freeman was to the effect that on the day of the killing he, Sherman Meredith, the latter's wife, Bell Meredith, and a little four or five-year-old son of the Merediths, left the Meredith home to visit one Gabe Smith, from whom Sherman Mer-

edith desired to purchase some articles, Smith being about to remove from the county; that in going to the Smith's he and the Merediths passed the home of John Duff, where they saw appellant, who came out of Duff's house as they got near the front gate and invited Meredith and wife to enter the house, but the invitation was declined, the Merediths explaining that they were going to Smith's and did not have time to stop; that passing on he and the Merediths reached Smith's house, where they remained perhaps two hours, and then started on their return to the Meredith home. When they reached and were passing the residence of John Duff, appellant again made his appearance at the yard gate and insisted that Sherman Meredith go into the house, telling him that he had plenty of whiskey, but Meredith again refused the invitation and he and his wife and Freeman proceeded on their way, and had almost reached Duff's barn, forty or fifty yards from the house, when appellant called to Sherman Meredith to come back, saying he wanted to talk with him. Thereupon Meredith went back and his wife with him, Freeman, however, sat down on a log by the side of the road. While appellant was talking with Sherman Meredith, Freeman left his seat on the log and walked back to within ten or fifteen feet of where appellant, Meredith and his wife were standing. Freeman did not know what they were talking about, but when he got near them heard appellant ask Meredith to look at some object across the field, which Meredith did, and as his face was turned from appellant, the latter drew a pistol from his pocket and shot him in the back of the head. That Meredith immediately fell to the ground, and as he did so, his wife caught his body and went down with him; thereupon, appellant pointed his gun over the fence and shot twice in the direction of Mrs. Meredith, one of the shots striking and killing her; that neither Meredith nor his wife had a weapon and Mrs. Meredith had not spoken a word to appellant.

Freeman further testified that following the shooting of Meredith and wife he ran for his life, pursued by appellant, who followed him across the field and shot at him, the pistol ball taking effect in his heel.

Freeman also testified that he was without a weapon and did not attempt to prevent appellant from killing Meredith and wife, believing himself to be in danger from appellant.

Lloyd Duff testified that he was cutting wood fifteen or twenty steps away from the place of the shooting; that he saw Meredith come back from the direction of the barn but heard him say nothing to appellant; saw appellant fire three shots at Meredith and wife and heard Mrs. Meredith say, "Lord, have mercy;" that Mrs. Meredith had no pistol, nor did he see Freeman with a pistol or see him shoot with one.

The appellant testified, in substance, that Sherman Meredith, in returning to his home from Smith's stopped at Duff's gate and called to him to come out, saying he wished to see him; that he went out to the gate and got into a conversation with Meredith, Mrs. Meredith being near her husband, and Freeman a short distance beyond Mrs. Meredith; that Sherman Meredith cursed and abused him and attempted to draw a pistol from his pocket, which he did partially draw, when appellant drew his pistol and got the first shot, the ball taking effect in Meredith's face or head; that Meredith then fell 'against the paling fence and to the ground, and that at that juncture, he (appellant) was shot at by Freeman, who following the shot, turned and ran; that he shot at Freeman as the latter ran off and jumping the fence followed him for some distance across the field and until Freeman made his escape. Appellant further testified that three shots were fired at Duff's house, one of them he fired at Sherman Meredith and another at Freeman after the latter shot at him; that he did not shoot at or try to shoot Mrs. Meredith, but that, in his opinion, she was shot by Freeman in attempting to shoot him. What we have thus outlined of the evidence are the salient facts of the homicide. It will be observed that Freeman was in many essential particulars corroborated by Lloyd Duff; on the other hand, we have been unable to find any evidence corroborative of appellant's testimony. Moreover, he is contradicted by the numerous admissions of guilt made by him at the time of his arrest, and in repeated subsequent conversations.

To John Wilson, deputy sheriff, by whom appellant was arrested at Winchester, where he had fled after killing Meredith and wife, he said:

"The trouble came up over a board tree Meredith had cut on land of his mother—that he shot at the negro—that he did not want any G— d— negro to testify against him—that a dead person could not talk and there was no

witness against him; that he tried to kill them all—he did not want witnesses—the woman was shot in the guts—in the stomach.''

To Rufus Wilson, jailer of Bell County, he said while confined in the Pineville jail:

That his mother and Sherman Meredith had been disputing over a board tree, and further, ''I am alright now; I have got them—I know my fences. I have been in trouble—I have got them on this proposition that no one saw me except the d—n negro; I ran him across a ten acre field and tried to kill him—I shot the s—— of a b—— in the heel—I know he will die because I shot him with a copper jacket—if he don't, well the jury won't believe him because they know he is prejudiced against me.'' The jailer then asked him about the other witness to the killing, Lloyd Duff, and his reply was:

''That is alright, he is with me.'' To which Wilson replied: ''You are alright then;'' in answer to which appellant said: ''Yes sir, what it takes is proof, I have got the proof. Nobody saw it but the negro and Duff—Duff is with me and they won't believe what the negro swears to. The woman picked up his head and said, 'Honey he has killed you,' and she grabbed the man as he fell.''

Isaac Hopkins testified that appellant told him he and Meredith had trouble over a board tree and the lines between the farms; that he fired four shots at the negro and would have killed him if he had more cartridges. ''That he understood the negro was shot in the heel and that if he was, with an automatic bullet, it would kill him and then there won't be any witnesses to tell of the killing but my friends. * * *'' ''I killed the woman—she had her hands under her apron—had a pistol.'' Appellant also said to this witness in the same conversation: ''There is nothing in killing a man. The main thing is to work on your proof.'' Also that he had trouble before with the Lewis' and Merediths and that this led to the killing.

To Joe Page he said:

''He told the woman to cut it out and if she did not he would put it to her—that the woman was hollering; that the negro got away—that he would have killed him but that he got away.''

To Speed Bryant, who was confined with appellant in the Pineville jail, he said:

"When Meredith fell the top of his head bounced up." Bryant then said to him: "I understand there was a pair of twins in the woman," to which appellant replied, "Yes, I tried my damndest to shoot her right through both of them."

In view of the convincing character of the evidence, the sex and the helplessness of the person slain, and the wantonness and cruelty manifested by the slayer in committing the crime, it is not apparent that the finding of the jury could have been other than a verdict of guilty, or that any punishment short of that inflicted by the verdict, would have met the ends of justice. The first ground relied on by appellant's counsel for a reversal is that the trial court erred in overruling his demurrer to the indictment. The record furnishes no support for this contention. The indictment contains four counts. In the first count it is alleged in proper language and in the usual technical terms, that appellant, and other persons, whose names were to the grand jury unknown, confederated and conspired together to kill and murder Mrs. Bell Meredith and, in pursuance of such conspiracy, did kill and murder her.

In the second count it is alleged in like terms that appellant and the persons referred to, did kill and murder Mrs. Bell Meredith. In the third, that she was killed and murdered by one or more of the persons, whose names were to the grand jury unknown, and that appellant, being present, did aid, abet, counsel and assist in such murder. In the fourth, that appellant did kill and murder Mrs. Bell Meredith and that the other persons, who were to the grand jury unknown, being present, aided, abbetted and assisted in the commission of the crime.

It is a well known rule of law that an indictment may charge the commission of an offense in different modes and in as many counts as the pleader desires to present it, and, when the indictment is thus drawn presenting sufficiently in each count every aspect of the case in which, from the evidence before the grand jury, the crime might have been committed, the accused may be convicted upon evidence showing his guilt under any of the counts. Anderson v. Commonwealth, 144 Ky., 215; Gamble v. Commonwealth, 23 R., 502; Jackson v. Commonwealth, 100 Ky., 249.

In Overstreet v. Commonwealth, 147 Ky., 471, we held:

"An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentences may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad. * * * In other words, in considering the sufficiency of an indictment, it will be read and considered as a whole, and if when so read and considered it substantially conforms to the requirements of the Code in respects to matters therein pointed out as material and necessary, it will be a good indictment."

Treating as surplusage the conspiracy charged and the killing done in pursuance thereof, it is patent that the indictment in this case charges directly and certainly that the appellant did kill and murder Mrs. Bell Meredith, first, by committing the crime in conjunction with others; second, by aiding and abetting such others in its commission; third, by doing it himself, aided and abetted by the others.

It is evident that the statement made in the indictment that the crime was committed April 17th, 1911, is a mistake, as the proof shows it was committed on March 5th, 1911; but this mistake does not vitiate the indictment, as it also alleges that the crime was committed before the finding of the indictment. Section 129, Criminal Code, provides:

"The statement in an indictment as to the time at which the offense was committed, is not material further than as a statement that it was committed before the time of finding the indictment, unless the time be a material ingredient in the offense."

Jones v. Commonwealth, 1 Bush, 34; Commonwealth v. Miller, 79 Ky., 431; Williams v. Commonwealth, 13 R., 893; Commonwealth v. Davis, 94 Ky., 612; Strickland v. Commonwealth, 83 Ky., 566.

Appellant also complains that the trial court erred in overruling his several motions for a continuance of this case. When these motions were made affidavits were filed showing the absence of material witnesses and the illness and absence of appellant's leading counsel, B. B. Golden.

The continuance was refused but the case was laid over from time to time until the attendance of all the witnesses, declared in the affidavits to be absent, was procured for the trial. It also appears from the record that Mr. Golden, appellant's chief counsel, was in attendance throughout the trial and conducted the defense with his usual vigor and ability. The record fails to show any error in the court's refusal of the continuance.

Appellant makes the further complaint that the court admitted incompetent evidence on the trial. The evidence alleged to be incompetent was that with respect to appellant's killing Sherman Meredith just before he killed Mrs. Meredith. It is argued that as appellant was tried and convicted under a separate indictment for the murder of Sherman Meredith, and his punishment fixed at confinement in the penitentiary for life, proof of that killing greatly prejudiced his rights in the trial for the killing of the wife.

If this is so, it was unavoidable. Evidence of appellant's trial and conviction for the killing of Sherman Meredith was not admitted, but his killing of the latter was properly admitted for it was competent as evidence on two grounds. First, because so immediately connected with the killing of the wife that it was a part of the res gestae. Second, because it served to show the unlawful intent or motive for the killing of the wife by appellant.

An elaborate discussion of the rule as to the admissability of such evidence and a review of the authorities thereon, may be found in O'Brien v. Commonwealth, 115 Ky., 608.

In that case O'Brien, with a companion, Whitney, in attempting to commit a burglary killed the owner of the house broken into. On the trial evidence of burglaries committee by the accused, on the same night in the same neighborhood and shortly before the commission of the murder, was admitted to show the motive with which the accused broke into the house where the murder was committed. The cases cited in the opinion in support of this ruling are, Tye vs. Commonwealth, 3 R. 59; Thomas vs. Commonwealth, 1 R. 122; Bishop vs. Commonwealth, 109 Ky. 558. The opinion also quotes with approval the following excerpts from Bishop's New Criminal Procedure, vol. 1, section 1126, bearing on the same subject.

"The intent, knowledge or motive under which the defendant did the act charged against him, not generally

admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted. Then it is permissible."

Also from the same volume, section 1125:

"Whole transaction. As explained under the doctrine of *res gestae,* whenever a part of a transaction appears in evidence the rest is thereby made admissible. So that the entire transaction wherein it is claimed that the wrong in issue was done may be shown, though it includes, also, other crimes, and even though each transaction was a continuing one, or transpiring in parts on different days." 1 Greenleaf on Evidence, section 53; 3 Greenleaf, section 15.

In Bishop v. Commonwealth, supra, the accused killed an officer who was trying to arrest him for another murder he had committed an hour before. On his trial for the murder of the officer evidence as to the first killing was admitted. On appeal it was insisted for the accused that evidence as to the first killing was incompetent and that he was greatly prejudiced by its admission, but in rejecting that contention the court said:

"It was competent to establish any fact which tended to show motive on the part of the accused, and to make plain to the jury the relations which existed between the accused and the officer at the time the homicide was committed. * * * In establishing the fact of the killing, it was impossible to avoid proving some of the details. Of course, it was essential that the jury be told that the killing at the 'lagoon' was not to establish guilt under the indictment upon which appellant was being tried, but was only to show why appellant was on the car, and to establish motive for the homicide. This the trial judge repeatedly and with exemplary care explained to the jury. * * * It is perhaps unfortunate for the appellant that the first homicide was so interwoven with the second as to furnish a motive. It was for that purpose, and that purpose only, competent. * * *" Miracle v. Commonwealth, 148 Ky., 453; Grass v. Commonwealth, 151 Ky., 87.

The killing of Mrs. Meredith followed so quickly the killing of her husband, that there was barely an appreciable interval of time between the acts. It may, therefore, well be said that the homicides were so inseparably connected as to constitute one transaction and make it practically impossible to admit evidence as to one of

them without admitting it as to the other. Obviously, proof of both homicides was admissible on the trial of appellant for either. And had there been a greater interval of time between the homicides, evidence as to the first would still have been competent on appellant's trial for the last, as it tended to show his motive for the last homicide, and together with his subsequent confessions left no doubt that the last killing was for the purpose of preventing Mrs. Meredith from becoming a witness against him for the killing of her husband, whom he had slain from a different motive, namely, because of a difficulty he had with appellant's mother over the cutting, by some member of the latter's family, of his timber. It appears from the record that the trial judge with proper explicitness explained to the jury that proof of the killing of Sherman Meredith by appellant furnished no evidence of his guilt under the indictment for the murder of Mrs. Meredith, but was only evidence to show the intent or motive with which appellant killed the latter. It is to be presumed that this admonition prevented the jury from considering the evidence with respect to the killing of Sherman Meredith, for any purpose other than that for which the court permitted its introduction. There was therefore no error in its admission. Appellant's further contention that the trial court erred in excluding competent evidence offered in his behalf finds no support from anything appearing in the record. It appears from the record that numerous questions were asked in appellant's behalf which the court would not permit the witnesses, to whom they were addressed, to answer, but it is impossible for us to say whether such answers, as were thus excluded, would have been competent as evidence, because of the absence of avowals as to what the answers would have been. Robinson v. Commonwealth, 149 Ky., 291.

It is also complained by appellant that L. P. Thompson, official stenographer of the court, upon being introduced for the purpose of contradicting the testimony of a witness of the Commonwealth, was allowed by the court to read from his stenographic notes or transcript made therefrom, all the testimony of the witness. As it appears from the record that appellant, through his counsel, consented or rather asked that this be done, he will not be heard to say that the court committed an error in permitting it.

We find no merit in appellant's complaint of the instructions. By them the jury were told in what state of case they would be authorized to find the appellant guilty of murder or voluntary manslaughter, and, if guilty of the first, what punishment might be inflicted, but, if guilty of the last, that they should simply so declare in their verdict; also what would authorize a verdict of acquittal, and what would justify the application of the law of self defense; while in and through them, separately and as a whole, ran the admonition to the jury to allow appellant the benefit of every reasonable doubt in the matter of determining his guilt or innocence, or, if they found him guilty, in determining the degree of his offense.

Complaint is made by the appellant of the ruling of the trial court in refusing to sustain the objection made by his counsel to some portion of the argument of Judge Faulkner, who assisted in the prosecution of the case. We do not find from the bill of exceptions that any particular statement made by Judge Faulkner was asked to be excluded from the consideration of the jury, but the motion seemed to be to exclude from their consideration all the argument and statements made by Judge Faulkner touching on the subject of conspiracy. We also gather from the record that E. H. Johnson, of counsel for the appellant, who preceded Judge Faulkner in the argument, dwelt at some length upon the evidence which apparently bore upon the charge of conspiracy, and argument that there was some evidence to show that some person other than appellant might have killed Mrs. Meredith. It appears that what was said by Judge Faulkner on the subject of the conspiracy was in answer to the statements of Johnson and in combating what the latter had said. As the indictment had unnecessarily alleged a conspiracy and there was evidence of none, the Commonwealth having rested its claim to a conviction upon the sufficiency of the evidence as to appellant's having committed the crime alone, neither Johnson nor Judge Faulkner should have indulged in an argument on the question of conspiracy, but, as Judge Faulkner conceded that there was no proof of a conspiracy and what he said in argument was merely responsive to the argument of Johnson, the failure of the court to exclude it from the consideration of the jury did not prejudice any substantial right of the appellant.

Appellant also complains that the trial judge absented himself from the court room during a portion of the trial

and while Judge Faulkner was making his argument to the jury. It appears from the record that the trial judge during the argument of Judge Faulkner absented himself from the court room for, perhaps, ten or fifteen minutes for a purpose that appears to have been, by him, regarded necessary. Before leaving the court room, however, he called B. G. Reams, a member of the bar, to him and had him take his seat on the bench. This was done without consulting counsel on either side of the case. During the brief absence of the judge from the court room objection came from opposing counsel to some statement made by Judge Faulkner in his argument to the jury. The attorney occupying the judge's seat did not pass upon the objection, but sent for the judge of the court who at once returned to the court room, took his place upon the bench and promptly ruled upon the objection. When the objection was made Judge Faulkner discontinued his argument until the return of the judge and resumed it after the latter ruled on the objection which had been made by opposing counsel during his absence from the court room.

We would not be understood as saying that a trial judge may absent himself from the court room during the trial of a case in his court. As said in Wheeler v. Commonwealth, 120 Ky., 697:

"To constitute the court, there must be a judge, possessed of certain constitutional qualifications; and he should be present at every stage of the trial, in order that he may conduct the same, and protect the rights both of the state and the accused.  *  *  *"

There are, of course, times when the judge must temporarily leave the court room, but such absences should occur only when imperatively necessary, and be made as brief as possible. Before leaving the court room, however, the judge should announce his purpose to do so, suspend any trial then in progress, and declare a recess until his return. By this means litigants will be protected in their rights and, in the temporary absence of the judge, the business of the court but little retarded. It is safe to say that any other course of conduct than that we have indicated for the guidance of the judge, would be hazardous to the rights of litigants and liable to prove hurtful to the public good. But no reason is apparent for our holding that the brief absence from the court room of the judge presiding in the instant case was prejudicial to ap-

pellant. Nothing occurred in his absence to elicit an objection from appellant's counsel, except the single statement made in argument for the Commonwealth by Judge Faulkner, who, upon hearing the objection, did not persist in or repeat the statement, but, on the contrary, discontinued his argument until the judge returned and ruled on the objection. The statement objected to does not appear to have been material or prejudicial, and appellant's counsel seems to attach less importance to the failure of the trial judge to sustain the objection to it, than to the fact of his absence from the court, at the time the objection was first made.

It is further contended by the appellant that the court, in his absence, overruled a motion made by his counsel to exclude from the consideration of the jury certain remarks made by the Commonwealth's attorney in argument; and also, in his absence, submitted the case to the jury. The first of these contentions is sustained by the record, the second is not. We are of opinion, however, that there was no error in the court's refusal to exclude from the consideration of the jury the statement of the Commonwealth's attorney objected to. The statement was with respect to three empty cartridge shells which, according to the evidence, were found on the ground at the place of the homicide. If, as the Commonwealth contended, and its evidence tended to show, three shots were fired by appellant at the time of the homicide, it was competent for the Commonwealth's attorney to argue to the jury that its theory, as to the firing of three shots by appellant, was sustained by the finding of the empty shells at the place of the homicide.

The statement of the Commonwealth's attorney was not objected to when made, and the motion of his counsel to exclude it was not made until after the argument of the Commonwealth's attorney was concluded, the case submitted to the jury and the court had adjourned for its noon recess; and was presented to the judge of the court where he had gone to get his noon meal. The judge declined to pass on the motion until court reconvened, and then overruled it, which he might well have done on the single ground that it came too late. Blanton v. Commonwealth, 147 Ky., 812. This ruling was made in the presence of the jury and in the absence of the appellant. It appears, however, that the court made no comment upon the motion, but merely overruled it and admonished the

jury to be governed by the evidence they had been permitted to hear. As previously stated the record does not sustain the contention that the case was submitted to the jury in the absence of the appellant. It is true affidavits, so stating, were filed on appellant's motion for a new trial, but affidavits of officers of the court and others that such was not the case, were also filed, and the latter are supported by the statements of the bill of exceptions signed and certified by the judge. From the record as a whole it is fairly apparent that appellant was present in person and by counsel when the case was submitted to the jury. The argument was concluded before the noon adjournment of the court, and, before the adjournment, the jury were, in substance, told by the court, in the presence of appellant and his counsel, that the admonitions previously given them not to discuss the case among themselves until it was finally submitted to them, were removed and they were at liberty to discuss and decide it. They were not then taken to the jury room, but were left in charge of the sheriff to be taken to luncheon. It does not appear whether the sheriff was directed by the court to return them to the court room or jury room after luncheon. He, however, returned with them to the court room and they were in the jury box, when the court reconvened and passed on the motion of appellant's counsel in respect to the exclusion of a part of the Commonwealth's attorneys argument.

The court should not have ruled on appellant's motion or admonished the jury, in his absence; nor should appellant's counsel, who were present, have permitted it to do so without objection, but we are unable to see that the action of the court in these particulars could have prejudicially affected any substantial right of appellant; and in the absence of an affirmative showing that he was thereby prevented from having a fair and impartial trial, we do not believe a reversal of the judgment would be authorized. In other words, we will not reverse a judgment of conviction in a case of felony, because of a single absence of the accused from court during the progress of the trial, or at the taking of some unimportant step in the case following its submission to the jury, unless, considering the whole record, we are of opinion that his substantial rights were prejudiced thereby.

In Howard v. Commonwealth, 118 Ky., 1, we held that it was not ground for reversal of a judgment of conviction

for felony, that during the impaneling of the jury, the court, with appellant's consent, examined a juror in appellant's absence touching his opinion of the case, and excused him. In the opinion it is said:

"Upon the other hand, it is insisted for appellant, that it was error for the court to examine Alexander (the excused juror), in his absence, and that he could not legally waive his right to be present at such examination. In support of this contention, section 183, Criminal Code, is relied on, which provides: 'If the indictment be for a felony, the defendant must be present, and shall remain in actual custody during the trial. * * *' While this court, in construing the section, *supra*, has repeatedly held that one charged with the commission of a felony cannot be tried during his absence from the court room, we find that cases have arisen in which it has been deemed necessary to relax that rule. Thus, in Hite v. Commonwealth, 20 S. W., 217, 14 R., 308, it was held that the occasional absence from the court room of the accused, on account of temporary illness, for a few minutes at a time, the trial continuing in his absence, did not prejudice the substantial rights of the accused. In Meece v. Commonwealth, 78 Ky., 586, it appeared that after the submission of the case to the jury, and their retirement to the jury room they returned into the court and asked for further instructions. The court declined to give any, but in the presence of counsel for the prisoner inserted by interlineation certain words in one of the instructions. The accused was absent at the time, and it was urged in his behalf that for this reason the judgment should have been reversed. This court, however, held otherwise, in doing which it said: 'While we recognize the fact that the accused, when on trial for a criminal offense, should be present during the entire trial, and that no evidence should be heard or instructions given or amended without his presence, either before or after the submission of the cause to the jury, still this court is only authorized to reverse in cases where the substantial rights of the accused have been prejudiced in the court below; and, in order to ascertain whether errors have been committed to the prejudice of the accused, the facts as well as the law of the case should be considered. While one charged with a criminal offense has the constitutional right to be tried by a jury, the right of appeal from the verdict and judgment against him does not exist, except by the legis-

lation of the State on the subject, and when permitting an appeal the law making power has the right to determine for what cause a reversal may be had.' ''

Another case in which this question was before us for consideration was Doyle v. Commonwealth, 18 R. 518, in the opinion of which it is said:

''Except alleged error of the court in giving and refusing instructions, the only one complained of is that the Commonwealth's attorney had proceeded for from two to five minutes in his closing argument before appellant had been brought from the jail, where he was confined during a recess, into court and in the presence of the jury.

''Appellant had a constitutional right to be present during the whole time of the trial, and if, when the Commonwealth's attorney commenced his argument, counsel had suggested he (appellant) was not present, doubtless the court would have suspended proceedings until his arrival; but lying in wait to take advantage of every trivial oversight or error on the part of the Commonwealth's attorney or trial court cannot avail an accused person in this court, if he had in other respects a fair and impartial trial. What was said by the Commonwealth's attorney during the brief period of appellant's absence from the court manifestly did not nor could have prejudiced his rights or interests because it did not pertain to the merits of the case.''

Finally it is insisted for appellant that the circuit court erred in refusing him a new trial on the ground of newly discovered evidence. The testimony of James Hodge and James Taylor, the alleged newly found witnesses, would, it is claimed, contradict Speed Bryant as to the confession he testified appellant made to him in jail, to the effect that he had shot Mrs. Meredith and tried to shoot her through both of the twins with which she was pregnant. It is claimed that Hodge and Taylor were confined in jail at the time Bryant and appellant were there and that as Bryant testified Taylor might have heard the confession, their testimony that the confession was not made or that they did not hear it, would effectually discredit Bryant. There would be much force in this contention but for the fact that Bryant's reputation was attacked by numerous witnesses introduced in appellant's behalf on the trial resulting in his conviction; in view of which, the testimony of Hodge and Taylor would be but

cumulative, and we have repeatedly held that a new trial will not be granted on account of newly discovered evidence which merely tends to impeach or discredit an opposing witness, or is only cumulative. In other words, to authorize a new trial the newly discovered evidence should be of such a weighty and convincing character as to have a decisive influence on the evidence to be overthrown by it. Ellis v. Comonwealth, 146 Ky., 715; McElwaine v. Commonwealth, 146 Ky., 104; Robinson v. Commonwealth, 146 Ky., 291.

It is manifest that the alleged newly discovered evidence relied on by appellant for a new trial, is not of the character last described. Moreover, it also appears that appellant knew before the introduction of his evidence on the last trial, what Hodge and Taylor would testify, as his affidavit admits he heard his attorney in outlining his defense to the jury mention these witnesses and state the facts in their possession; yet with such knowledge in his possession, no effort seemed to have been made during the trial by himself or his counsel to procure the attendance of either Hodge or Taylor. It being evident that due diligence on the part of appellant would have procured the attendance of both Hodge and Taylor, in time for obtaining the benefit of their testimony on the trial, and further that the testimony would, if yet procured, be only cumulative, it is patent that there was no error in the refusal of the new trial by the circuit court on the ground of newly discovered evidence. Indeed after a careful review of the record and consideration of every material ground urged by appellant for a reversal, we have maturely reached the conclusion that he received a fair and impartial trial. We do not mean to say that the record is free of error, this is rarely so in any case, but to declare that such errors as were committed by the trial court did not prejudice any substantial right of the appellant. This being true, notwithstanding, the severity of the penalty imposed, justice imperatively demands that we approve the verdict and judgment of conviction. Wherefore the judgment is affirmed. Whole court sitting.