Salisbury v. The Commonwealth.

CASE 87—INDICTMENT—JUNE 25, 1881.

# Salisbury v. The Commonwealth.

### APPEAL FROM FLOYD CIRCUIT COURT.

1. The appellant had exercised all proper diligence in attempting to obtain his witnesses, and the court should have granted him a continuance.
2. The indictment is sufficient.
3. The motion to compel appellee to elect upon which count of the indictment it would proceed was properly overruled.
4. The evidence as to where deceased had been and what he had been doing for several days before the killing was incompetent.
5. The court should have, upon the appellant's motion, excluded the father-in-law of deceased, who was a witness for appellee, while the other witnesses were testifying.
6. There is no law requiring the court to cause the bodies of deceased persons to be exhumed at the cost of the commonwealth.
7. The court erred in its instruction to the jury in regard to malice.

R. H. WEDDINGTON FOR APPELLANT.

1. The court erred in refusing a continuance. Appellant was confined in jail, and did his utmost to obtain his witnesses. The time given was insufficient. Officers refused to execute the subpœnas, and at the end of the time given he was in no better condition to try.
2. Error was committed in excluding competent testimony.
3. The court erred in its instructions.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. Appellant had a fair and favorable trial. Even if appellant had been an officer with a warrant of arrest in his hand, his act was murder.
2. The instructions are exceedingly fair to the appellant.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

John Morris was killed in the county of Floyd on the 9th of February, 1881.

Five days thereafter the appellant and Wm. Banks were arrested, tried, and held without bail by an examining court to answer for the murder of Morris.

On account of the insufficiency of the jail, they were sent to the jail of Boyd county, which is about eighty miles from

Floyd court-house, where they were indicted on the 30th of March.

Two days before the indictment was found they were lodged in the Floyd county jail.

On the day after the indictment was filed in court the case was called for trial, and they applied for a continuance upon their joint affidavit, which was refused, but a postponement of ten days was allowed for preparation.

By direction of the appellant's counsel, subpœnas were issued to the several counties where his witnesses resided.

At the end of the postponement the case was again called for trial, and again the appellant moved for a continuance on the ground of the continued absence of his witnesses upon whom, he alleged, the subpœnas had not been served, because the ministerial officers of the counties where they resided had refused to accept or execute them.

His motion was overruled, a separate trial awarded, and he was convicted of the offense of murder, and sentenced to the penitentiary for life.

From that sentence he appeals to this court, and here complains—

1st. That he was not allowed a legal opportunity to procure the presence of his witnesses whose testimony was material to his defense.

He stated in his affidavit for a continuance, in substance, that J. M. Pigman, a justice of the peace of Letcher county, had, on the oath of his co-defendant, Wm. Banks, issued two warrants for the apprehension of the deceased, charging him in one with maliciously stabbing Emory Campbell, in Perry county, and in the other with maliciously shooting and wounding Banks, in Floyd county; and that the warrants were placed in the hands of A. H. Amburgy,

Salisbury v. The Commonwealth.

sheriff of Letcher county, who deputized Banks, in writing
entered on the back of the warrants, to execute them, and
at the same time summoned the appellant to go with Banks
as a guard to aid him in the act.     That he could prove
these facts by those officers, who resided near sixty miles
from Floyd court-house.     And he could also prove by
Emory Campbell and Joseph Stacy, of Perry county, that
"deceased, in 1875, in Perry county, Kentucky, willfully
and maliciously stabbed and wounded the said Campbell,
and not in his (Morris') self-defense."

He stated that he could prove by Hallifield and Combs
that, after Morris was killed, the appellant and Banks "sent
a man to have a warrant obtained for them, and a guard
summoned to protect them, so that they might surrender
and have an examination of the charge of them having
killed Morris before the proper authorities, and that the
party had gone to obtain the warrant when they were
arrested by Hoover and his *posse*."

It is contended by appellant's counsel that the clause
of section 189, Criminal Code, which reads: "When the
ground of application for a continuance is the absence of
a material witness, and the defendant makes affidavit as to
the facts which such witness would prove, the continuance
*shall* be granted, unless the attorney for the commonwealth
admit upon the trial that the facts are true," destroys the
power of the court to postpone the trial to any time in the
same term when the ground of application for a continuance
is such as it contemplates.

To this construction we do not agree, because if the party
should be given a reasonable opportunity to procure the
presence of his absent witnesses and prepare for trial, it is
unquestionably within the legal power of the court to order

a postponement to a day in the same term. (Section 188, Criminal Code.)

There are, however, but two facts to determine about the question of continuance in this case—

1st. Were the witnesses material?

2d. Did the appellant use due diligence in his effort to have them present. (Morgan v. Commonwealth, Bush.)

Section 35, Criminal Code, says: "An arrest may be made by a peace officer or by a private person," and section 37: "A private person may make an arrest when he has reasonable grounds for believing that the person arrested has committed a felony."

There is no provision of the Code authorizing any other person than a peace officer to make an arrest in obedience to a warrant of arrest.

Hence the authority to execute the warrant attempted to be conferred by the sheriff, Amburgy, upon Banks, a private person, was illegal, and of itself furnished no protection to Banks and the appellant. But the fact that the sheriff had no legal authority to deputize Banks to execute the warrant and the possession of it by the latter did not deprive the one having *reasonable grounds for believing that the deceased had committed a felony* of the right to arrest him.

For without any warrant a private person may make an arrest when such is the fact. (Secs. 37 and 46, Criminal Code.) And the illegal possession of a warrant does not alter the case.

But the existence of reasonable grounds for believing, either by Banks or the appellant, that the deceased had committed a felony, furnished no authority or right to the other to aid in making the arrest, unless he likewise had reasonable grounds so to believe.

Salisbury v. The Commonwealth.

Therefore the summons of the appellant by the sheriff and by Banks, to aid the latter in making the arrest, was illegal, because none but an officer making an arrest may summon persons to aid in it. (Sec. 41, Crim. Code.) But it was competent for the appellant to show that the warrants were legally issued and placed in the sheriff's hands, and that the latter summoned him to aid in making the arrest; yet, notwithstanding he may show these facts on a future trial, if he should not also show that he had reasonable grounds for believing that the deceased had committed a felony, they will avail him nothing; but in the presence of such proof they would be competent to illustrate his motive. It was material to the appellant's defense, in view of the law as above expounded, to have not only Pigman and Amburgy, but Campbell and Stacy present, by whom he swears, in his affidavit, he can prove the deceased had committed a felony for which he was attempting to arrest him when his death ensued.

While private persons may make arrests on the ground named, still they cannot make the occasion a pretext for wreaking their vengeance upon a person known to them to be guilty; nor can any unnecessary force or violence be lawfully used in making the arrest.

On the trial, the commonwealth introduced evidence tending to show that appellant and Banks, heavily armed, resisted arrest for the space of several hours before they surrendered. This testimony disclosed the materiality of the absent witnesses, Hallifield and Combs, whose evidence, if true, would, to a great degree, negative any design upon the part of Banks and the appellant to avoid arrest and examination.

The introduction of counter-affidavits, contradictory of the statements made in appellant's affidavit of what his absent witnesses would prove, was contrary to law, and if indulged, would frequently deprive accused persons of the right to have the witnesses of the facts brought face to face, and the benefit of a personal examination of them in open court, which so often conflicts with and explodes the biased views and misapprehensions of interested parties.

Such a practice would substitute hearsay for primary evidence, and violate the letter and spirit of section 189 of the Criminal Code, which secures to the defendant the right to a continuance or a reasonable opportunity to procure the presence of his witnesses, "when the ground of application is the absence of a material witness, and the defendant makes affidavit as to the facts which such witness would prove."

We believe he used due diligence. The law did not require him to anticipate his indictment and prepare his defense before it was found. He was imprisoned at such a distance from the place of trial and the residence of his witnesses, and the time allowed was so short for procuring their presence, that greater diligence than he exercised could hardly be required of him. He caused the subpoenas to be issued, and offered to the proper officers for execution, who illegally refused to accept them. He was in jail, and could not have foreseen, nor was he required to expect, the unlawful action of the officers in refusing to execute the process, nor did he have time to receive information of their action and repeat his effort to have his witnesses present on the day fixed for the trial by the order of postponement.

Salisbury v. The Commonwealth.

The court therefore erred in not postponing the case for a greater length of time, or granting a continuance.

2. The indictment is good.

And the motion to compel the state to elect upon which count in the indictment it would proceed was properly overruled.

The charge of a conspiracy between the defendants to commit the offense for which they were jointly indicted did not constitute a separate and single offense, but it constituted an aggravating element of the one for which they were arraigned, and it was made to prevent the defendants from testifying for each other, as, without the allegation, although the fact may exist, each would be a competent witness for the other.

Subsection 3, section 165, does provide that a demurrer is proper "if more than one offense be charged in the indictment," &c.

But it must be construed with section 234, which authorizes a conspiracy to be charged against two or more persons jointly indicted for the same offense.

Such a construction of these sections as is sought to be placed upon them would make them destroy each other.

For the legislature certainly never intended, if a conspiracy be charged in an indictment against two or more for the same offense, that that would render the indictment obnoxious to subsection 3 of section 165, nor that those who are charged and proven to be guilty of a conspiracy in the perpetration of an offense can escape the denunciation of section 234 and become witnesses for each other.

It was error to allow the commonwealth to prove that the deceased had been attending upon his wife's *sick mother* for several days before his death.  It was proper to allow the

testimony as to *where* he had been, but not as to *his purpose* in being there. It had no connection with any issue in the trial. It threw no light upon any act or motive of the appellant, but tended alone to arouse and touch the sympathy of the jury.

On the motion of appellants, the court ought to have excluded the father-in-law of the deceased while the other witnesses were testifying, because he was an important witness, and afterwards testified and agreed in several material points with his son's testimony, who was but fifteen years old and the only eye-witness to the homicide. (8 Bush, pages 89–96, Walker v. Commonwealth.)

We do not mean to intimate that any untruth has been testified to by either of these witnesses, but the policy of the law in requiring the separation of the witnesses on the motion of either party is based upon sound reason and justice. And we know of no exception to the rule of excluding witnesses which allows a prosecutor and a witness in the same person to sit by and listen to the details of a trial, and then testify himself about the same or connected matters. He, of all others, except the willfully corrupt, is most obnoxious to the rule, for he may have his feelings enlisted or his revenge rankling in his bosom.

The appellant alleged in his affidavit that the boy who was present at the homicide had' testified that the appellant shot the deceased once with a rifle gun, and he expected the same evidence would be given on the trial, and thereupon moved the court to have the body of the deceased exhumed, and the bullets extracted, avowing that they would all prove to be pistol balls, and that Banks had done the whole of the shooting.

He stated that he had nothing to pay the expenses of the exhumation with, and no friends or relations who were able and willing to do so for him. The court ordered the coroner to exhume the body, and cause the examination to be made, on the condition that the appellant should first pay the expenses thereof. This he was unable to do or to have done, and of this action of the court he complains. There is no law requiring the court, at the instance of an accused person, to have dead bodies taken up and examined at the expense of the state or county, for the purpose of furnishing him with evidence in his defense; nor could it compel the officers or others to perform such service without compensation. As the court exercised all the power it had in his behalf, the appellant has no legal ground for complaint.

The last assignment of error to be noticed is to instructions. The jury were told that—

"Malice is implied by law from any deliberate cruel act committed by one person against another, however suddenly done."

This instruction, with immaterial verbal differences, in one form or another, has been over and over denounced by the court as taking from the jury a question of fact which peculiarly belongs to its province. (Farris v. Commonwealth, 14 Bush; Trimble v. Commonwealth, 78 Ky.; Buckner v. Commonwealth, 14 Bush.)

An act deliberately and cruelly committed is a fact from which the jury may infer malice, its force depending, however, upon the attendant facts and circumstances of each case. In some cases it would convince the mind of a reasonable man that the perpetrator of it was actuated by

malice.   In other cases it might be extenuated, excused, or even justified by explanatory evidence.

While this court has intimated that so instructing the jury was not a reversible error, yet a correct exposition and rigid execution of the criminal law, in accordance with the genius of our republican institutions, demand that such an instruction as above quoted should no longer be tolerated.

Wherefore, the judgment is reversed, and cause remanded, with directions to grant appellant a new trial, and for further proper proceedings.