[No. 12072. Department Two. August 15, 1914.]

THE STATE OF WASHINGTON, *on the Relation of William J. Meyer et al., Plaintiff,* v. MILES L. CLIFFORD, *as Judge etc., Respondent.*[1]

DISCOVERY—EXHUMATION OF BODY—RIGHT TO—EVIDENCE—SUFFICIENCY. The evidence is insufficient to justify an order for the disinterment of the body of a father to determine his alleged impotency, upon an issue in probate proceedings as to the parentage of children, where it appears that more than two years elapsed after the interment before application was made therefor, and that an examination of the body would, in all probability, fail to establish the facts sought thereby.

BASTARDS — ACKNOWLEDGMENT BY PARENT—DISCOVERY—EXHUMATION OF BODY. Where, in probate proceedings, the question of the parentage of children was in issue, and it was shown that the father, upon obtaining a divorce from his first wife, acknowledged and swore in the presence of a witness that the children in question were born to his first marriage, thereby admitting them to be his children, as provided by Rem. & Bal. Code, § 1345, the court is not justified in ordering disinterment of the father's body and the appointment of physicians for the purpose of determining his alleged impotence.

DEAD BODIES—BURIAL—REMOVAL. The court will not order the exhumation of a body for the purpose of reburial in another place, its present resting place being selected by the widow of deceased, although he expressed a wish to be buried in another cemetery, and though title to the burial lot was in dispute, the evidence showing that a stepdaughter, the alleged owner of the lot, made no objection to the body resting in its present grave until more than two years after burial, and that the application for removal was a mere pretext for the exhumation of the body to determine the questioned parentage of deceased's heirs.

Certiorari to review an order of the superior court for Pierce county, Clifford, J., entered May 9, 1914, in probate directing an administrator to exhume a body, after a hearing upon affidavits. Reversed.

[1]Reported in 142 Pac. 472.

*Boyle, Brockway & Boyle,* for relators Meyer.

*H. W. Lueders,* for relators McAllister *et al.*

*Gordon, Easterday* and *John Mills Day* for respondent administrator *et al.*

MOUNT, J.—This proceeding is brought here by writ of certiorari to review an order of the superior court for Pierce county, in probate, entered on the 9th day of May, 1914, directing the administrator of the estate of Frederick Meyer, deceased, to exhume the body of Frederick Meyer, appointing three physicians to make an examination of the body and to report the result thereof to the court; and further directing the administrator to remove the remains of the deceased from Steilacoom cemetery to a cemetery known as Gravelly Lake cemetery, all at the expense of the estate. Before the final order as above stated was entered, an application was made here for a writ of prohibition. This court denied the writ upon the ground that the order when made could be reviewed upon a writ of certiorari. *State ex rel. Meyer v. Clifford,* 78 Wash. 555, 139 Pac. 650.

The case was tried to the lower court upon affidavits. Upon these affidavits, an order was made as above stated. The facts as shown by the record are substantially as follows: In the year 1853, Frederick Meyer was married to Frances Louisa Meyer. During wedlock, eleven children were born to Mr. and Mrs. Meyer. The oldest of these children is now 58 years of age and the youngest, if living, is 34 years of age. In the year 1880, Frederick Meyer, in the district court of the territory of Washington, filed an action for divorce against Mrs. Meyer upon the ground of adultery. In that action, he set out the names of the children that were born to them, and their ages. He denied the paternity of the two youngest children, who were then of the ages of four years and one year respectively. It is apparently conceded that he obtained a divorce in the year 1880 upon the ground stated, although the decree is not in the

record. Shortly after the decree of divorce in that case, and in June, 1881, Frederick Meyer was married to Agneta Chambers. Mrs. Chambers at that time was a widow, having two children, a son and a daughter, named Robert L. Chambers and Margaret A. Peterson. No children were born to Mr. and Mrs. Meyer by this marriage.

On June 23, 1911, Frederick Meyer died, leaving an estate of about $13,000. His body was buried in the Steilacoom cemetery on June 25, 1911, at the request of his widow, in a lot the title of which stood in the name of Margaret A. Peterson, daughter of the widow by a former marriage. Margaret A. Peterson knew of this burial a few days after it had been made, and she apparently made no objections thereto at that time. Robert L. Chambers, son of Agneta Meyer by a former marriage, was soon thereafter appointed administrator of Mr. Meyer's estate. On December 24, 1911, Agneta Meyer, the deceased's second wife, died.

On September 20, 1913, the administrator of the estate of Frederick Meyer filed a final report and a petition in the superior court, stating that, through inadvertence and oversight, the body of Frederick Meyer was interred in a lot in Steilacoom cemetery belonging to Margaret A. Peterson, and that said remains were so interred without the knowledge of Margaret A. Peterson, and that she insists that the remains be removed; that the administrator has heard, upon good authority, and believes, that none of the children by the former wife of the deceased, are heirs at law of said deceased; that, during practically all his life, the deceased was impotent, and died without issue; that the administrator believes that an examination of the remains by competent physicians will disclose the fact that the deceased, Frederick Meyer, was sterile at the time of his death, and for many years previous had been a eunuch; and prayed for the disinterment of the remains and for the appointment of physicians to make an examination of the body, and that the ad-

ministrator be authorized to incur the reasonable expenses in that behalf.

A little later on, in November, 1913, Margaret A. Peterson filed a petition making the same allegations, and praying for the same relief. Citations were issued to all parties interested, and appearances were made by affidavits contradicting the allegations of the petitions. Affidavits were also made by the petitioners controverting these affidavits. The court thereupon made the order sought to be reviewed in this proceeding. An issue was made upon the petition of the administrator and of Margaret A. Peterson, to the effect that the children of Frederick Meyer by his former wife were not his legitimate children, and therefore had no right to inherit his estate. It was upon this issue that the petitioners sought to have the probate court exhume the body of the deceased for the purpose of an examination to determine whether he was a eunuch when his body was interred.

It is claimed by the respondents that it was proper for the court to make the order for exhumation of the body for the reason that, if the deceased was a eunuch, he was not competent to get children, and that this fact is a material one upon the issue presented. It may be the rule that, where the interests of justice demand it, and where there is no other way to prove a fact except by the exhumation of a body which has been interred, the court may make an order for the disinterment of the body and an examination thereof. As was said in *Grangers' Life Ins. Co. v. Brown*, 57 Miss. 308, 34 Am. Rep. 446:

"We are not prepared to say that in a proper case the court, in the interests of justice, should not compel the exhuming and examination of a dead body which is under the control of the plaintiff, if there is strong reason to believe that without such examination a fraud is likely to be accomplished, and the defendant has exhausted every other method known to the law of exposing it. We are prepared to say, however, that such an order should be made only upon a strong showing to that effect. It would be a proceeding re-

pugnant to the best feelings of our nature, and likely to be in many cases so abhorrent to the sensibilities of the surviving relatives that they would prefer an abandonment of the suit to a compliance with the order. Without undertaking to define with accuracy what circumstances would justify the making of such an order, we think that a case calling for it was not shown in this instance. The suit had been pending quite eighteen months before it was brought to trial, and during that time no steps had been taken to procure any testimony tending to establish the defense set up, nor was there any competent legal testimony adduced upon the trial with this view."

This statement is in accord with our views upon the question. In this case, it was shown without dispute that Frederick Meyer died on June 23, 1911, and was buried on the 25th of the same month. Two years and a half elapsed after the interment before this application was made. The application was then made, not upon knowledge, but upon hearsay statements and information and belief. The affidavits filed on behalf of the relators here show that one of the sons of the deceased by his first wife knew, of his own knowledge, that his father had never been castrated. And the nurse who bathed him and cared for him during his final illness made an affidavit to the same effect. If these affidavits are to be taken as true, and they appear to be reasonable upon their face, an examination would avail nothing. The affidavits filed by the physicians show that they were not certain that an examination would be of any practical value, because of the disintegration of the body in case it was interred in wet soil. It is apparent that, if an examination were made of the body after it has been buried for a period of two years and a half, and it is discovered that the deceased had been castrated during his lifetime, it would not necessarily follow that he was castrated before the birth of his children, the youngest of whom was born more than thirty years prior to his death. No such order should be made ex-

cept upon a strong showing that the facts sought will be established thereby.

The respondents in this case apparently rely upon the authority of *Lane v. Spokane Falls & N. R. Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153, where the respondent was a passenger on the appellant's train and sued to recover damages for injuries alleged to have been sustained as such passenger. The court in that case authorized an examination of her person. That, of course, is an entirely different case from this; so different that it need not be specifically distinguished. In that kind of a case, an examination would amount to something when it was made. But here an examination at this time would, in all probability, fail to disclose the fact which is desired, and if it was disclosed, would not be evidence of the fact that such condition had existed for a period of more than fifty years.

It seems to us that another and sufficient reason for reversing the order of the trial court is that Frederick Meyer, at the time he obtained his divorce from his first wife, alleged that these children were born to him and his first wife in lawful wedlock. The statute at Rem. & Bal. Code, § 1345 (P. C. 409 § 643), provides:

"Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child . . ."

Frederick Meyer, in the year 1880, when he obtained his divorce from his first wife, acknowledged and swore in the presence of a witness to the fact that these children were born to his first marriage, and thereby admitted that they were his children, clearly within the terms of the statute. And hence it follows that, even if the children were illegitimate, which is almost beyond reason to believe, they thereby became his lawful heirs under the statute. The exhumation of the body, then, even if the fact should appear upon examination that Frederick Meyer was a eunuch, would not avail as

against this positive proof that he had recognized the children as his own.

For all these reasons, we are satisfied that the trial court erred in ordering the exhumation of the body and the appointment of the physicians to make the examination.

It is argued by the respondents, further, that the court properly ordered the exhumation of the body for the purpose of reburial in another place.   And we are cited to *Wood v. Butterworth & Sons*, 65 Wash. 344, 118 Pac. 212, that the wish of the deceased, if it be ascertainable, must control the place of his burial.   What was there said was said in regard to a case where the body had not yet been interred.   It is true, it is shown in the record here that the deceased expressed a wish to be buried in another cemetery.   But at the time of his interment, his widow, the mother of these respondents, was living.   At her request, the body was laid to rest at the place where it now is.   It is true, an issue is made in this case as to the ownership of the lot in which the body rests. The relators contend that the title is held by Margaret A. Peterson in trust for her stepfather and her mother, and was paid for by money furnished by Frederick Meyer for the purpose of buying the lot; while the respondents contend that the lot was purchased by Margaret A. Peterson with her own money and in her own right.   It is conceded that she was not present at the funeral of her stepfather.   But she was at her mother's home within a few days after the funeral; and apparently has made no objection to the body resting in its present grave, until this application was made.   It is apparent, under these facts, that this application for removal of the body from its present grave to another cemetery is a mere pretext for the exhumation of the body.   She has acquiesced in its resting place for two years and a half.   If the property is hers, she may show that fact in a proper action, and obtain possession.   But in this proceeding, the title to this lot cannot be tried, and especially upon affidavits.   If the question is, should the body be removed upon the applica-

tion of the administrator merely, such order might come within the discretionary powers of the probate court. But viewing it, as we do, as a mere pretext for an exhumation of the body, it has little or no weight.

We are satisfied that, upon both grounds, the order was made without sufficient cause or excuse, and it is therefore reversed and set aside.

CROW, C. J., FULLERTON, MORRIS, and PARKER, JJ., concur.