## Sexson v. Commonwealth.

(Decided May 22, 1931.)

178

RODES K. MYERS for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

Elmer Grayson, Dick McNise, and Ben Sexson were jointly indicted for the murder of J. Robert Kirby. Grayson was tried and received a life sentence in the penitentiary. McNise died from a wound he received. Finally Sexson, who was only nineteen years of age was placed on trial. He was found guilty, and his punishment fixed at death. He appeals.

The first objection made is that the defendant's demurer to the indictment should have ben sustained. Briefly put, the descriptive part of the indictment is this: In December, 1929, the three defendants willfully, maliciously, and feloniously conspired together, and, pursuant to the conspiracy, with violence robbed the bank of Oakland, Ky., with force and arms, and took therefrom a large amount of money, and then, to make good their escape and to get away with the money they had stolen, they willfully, maliciously, and feloniously shot and killed J. Robert Kirby, from which shooting Kirby then and there died.

The first objection to the indictment is that it charges more than one offense, that is, it charges the robbing of the bank and the shooting of Kirby; but the robbing of the bank is only stated as a matter of inducement to show under what circumstances the shooting of Kirby occurred. The only offense with which the defendants are charged in the accusatory part of the indictment is

willful murder. The descriptive part of the indictment, stating the facts constituting the offense, does not enlarge the charge. Only the crime of murder is charged.

It is also urged that it is not charged in the indictment that the offense was committed with malice aforethought. But it is charged in the indictment that they shot and killed Kirby in an effort to escape with the stolen money and for the purpose of making their escape. It is the duty of all good citizens to arrest known felons and to prevent their escape. A citizen so doing his duty is entitled to the same protection as the officer of the law. It is well setled that it is malice in law for a criminal to shoot an officer doing his duty in order to effect an escape from him. It is also malice for a criminal to shoot a private citizen to effect his escape. To have added that the shooting was done with malice aforethought would have been only to repeat what the facts stated in the indictment showed. The indictment charges that the acts were maliciously done. In Turner v. Com., 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329, it was held that the intentional malicious killing of one human being by another without legal justification or excuse, and under circumstances which are insufficient to reduce the crime to manslaughter, is murder. By section 122 of the Criminal Code of Practice it is provided, in lieu of the common-law forms, that the indictment must contain a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended and with such degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case. The indictment here clearly comes up to this rule, and the demurrer to it was properly overruled.

The next ground for reversal requires a statement of the facts. Kirby lived at Smith's Grove some miles from Oakland. His car was at the door, and he and Charles Baird, when they heard of the bank robbery at Oakland by telephone, which told them that the robbers had come in that direction, at the suggestion of Kirby got in the car together and went down the road. When the robbers saw them coming, they turned off on another road, and, as they turned, fired some shots at them. Kirby and Baird followed them down this road. When they had gone several miles, the robbers saw in the road

in front of them a lot of men, and, fearing that they could not get by, they stopped and turned their car, and, as they came back, soon met Kirby and Baird. When they saw Kirby and Baird coming, they stopped and got out of their car. Kirby and Baird got out. As Baird was getting out, his gun went off accidentally. The proof is conflicting as to whether this was before or after some shots were fired from the other car. Kirby was shot in the side, and died soon thereafter. The robbers fled across the field into the woods, leaving their car standing there. They were afterwards arrested, and there is no dispute as to their identity. The proof for Sexson on the trial was to the effect that Kirby was shot by Baird, and that Baird continued to shoot at them after he got out of the car. It is insisted for the appellant that Kirby was shot before he reached the ground as he got out of the car, and that, there being no shot through the car door, he could not have been shot from the other car. The fact, too, that he was shot in the side is also relied on, as he had his side toward Baird as he got out of the car and did not have his side then toward the other car. Grayson and Sexson both testified on the trial, and this is in substance Sexson's defense. On the other hand, the proof for the commonwealth tended to show that Kirby was not shot by Baird.

On his first appearance in the case, and some days before the trial, defendant filed an affidavit setting out briefly the above facts, and asking that the body of Kirby be exhumed at his cost, stating that the examination of the body would show positively who shot him, as the balls were of different caliber. The court overruled the motion, and forced the defendant into trial without an examination of Kirby's body. In 17 C. J. p. 1140, sec. 7, the rule is thus stated:

"The right to have a dead body remain unmolested is not an absolute one; it must yield where it conflicts with the public good or where the demands of justice require such subordination. A court will not, however, order a body to be disinterred unless there is a strong showing that it is necessary and the interests of justice require it." To same effect see Gray v. State, 55 Tex. Cr. R. 90, 114 S. W. 635, 22 L. R. A. (N. S.) 513, and notes.

That the court in a proper case has power to order an autopsy is well settled. State v. Clifford, 81 Wash. 324, 142 P. 472, Ann. Cas. 1916D. 329, and notes; Salisbury v. Com., 79 Ky. 425.

While the court has a discretion in matters of this sort, this is a case of life and death. If the body is exhumed, it can be seen directly from the course of the bullet whether it was fired from the car in which Kirby was riding or from the other car. The two guns carry different bullets, and the bullet found in Kirby will show from which gun it came. In a case where human life is at stake and an exhumation of the body would show the truth, the exhumation should be made. The court therefore concludes that the circuit court erred in overruling the motion for the exhumation of the body of Kirby, and on the return of the case to the circuit court such an order will be entered.

The defendant introduced the coroner and proposed to prove by him the range of the ball. But his statement of facts was so meager that his conclusion as to the range of the ball was properly held inadmissible. It was, on the facts stated, simply a surmise.

Appellant also complains that proof was given by the officers of what they found in some valises left in Bowling Green at the house where the defendant stayed the night before. After the offense was committed and the defendant had left the state, the officers went to this house and took possession of these valises and other things left there by the defendant. The defendant insists that they had no search warrant, and that all this was without right. But the constitutional provision as to search and seizure has no application in such a case as this. In 35 Cyc. p. 1271, the rule is thus stated:

"It is well settled that a person legally arrested and in the custody of the law on a criminal charge may be subjected to a personal search and examination, even though against his will, for evidence of his criminality, and, if found, it may be seized without violating his constitutional rights."

When a defendant has left the state and cannot be arrested, the officer may seize anything that he has left behind that will reasonably tend to his identification, and, having seized such property, may open it and see what is in it. This is what was done here, and there was no error

in the proceedings. The officers had a right to seize the abandoned property that would furnish some clue to the identification of the persons who had left it.

The court properly excluded all the evidence as to what took place in Chicago leading up to appellant's arrest, and he should have excluded the statement of these facts to the jury by the commonwealth attorney. On another trial, in stating the case these facts will not be stated to the jury, and the defendant will not be cross-examined on immaterial matters.

It is earnestly insisted for appellant that the jury were not kept together. It is unnecessary to go into this, as on another trial other arrangements may be made. The other matters complained of will probably not occur on another trial. The court finds no substantial error in the instructions to the jury on the facts shown on the trial.

Judgment reversed, and cause remanded for further proceedings consistent **herewith.**

Whole court sitting.

### Dissenting Opinion by Chief Justice Thomas.

The reversal of the judgment of conviction herein was made upon the sole ground that the court erred in overruling defendant's application to require the body of the deceased, J. Robert Kirby, exhumed, and that a bullet, supposed to be therein, extracted in order to determine whether the bullet, if found, was one fired from a rifle instead of from a pistol, the latter of which defendant claimed to have used upon the occasion of the killing of the deceased. No other reversible error was found in the record, and the opinion, in substance, holds that no other one existed.

I readily agree that in a proper case such exhumation may be ordered by a trial court when the exigencies of the case, and the urgent demands of justice, require it; but no such order may even then be made *unless* the applicant therefore appropriately manifests and presents to the court "a *strong showing* that it is necessary and the interests of justice require it." (My emphasis.) The quotation is a part of the text from 17 C. J. that is incorporated in the opinion, and the same language is found in the case of Gray v. State, a Texas, one reported in 55 Tex. Cr. R. 90, 114 S. W. 635, 643, and 22 L. R. A. (N. S.) 513. The opinion in that case, in approving the

requirement of a "strong showing" before any such order will be made, says: "It would, of course, be conceded that such a request ought not to be granted, either on application of the state or the defendant, lightly or inconsiderately, nor in any case unless such course was absolutely essential to the administration of justice." The same requirement of a "strong showing," as a condition precedent to the granting of such an order, is repeated in the opinion of the Washington court in the case of State v. Clifford, 81 Wash. 324, 142 P. 472, 474, Ann. Cas. 1916D, 329, in which that court recognized the power and authority of the trial court, within the indicated limitations, to make such an order, but it was careful to say: "We are prepared to say, however, that such an order should be made only upon a strong showing to that effect," and the court not only said in that opinion that such an order should not be made, except upon such a showing, but also said that, if the fact proposed to be established by the autopsy could be proven otherwise, and where there was other evidence in the case to establish the fact proposed to be proved by such an autopsy then the order of the court overruling the motion would not be considered as an abuse of discretion.

The annotations to that opinion in the cited volume of Annotated cases begins on page 331, and the first sentence of the annotator is: "The power of a court to order the exhumation of a dead body for evidentiary purposes has been directly passed on by the courts in but few instances. In several cases it has been said obiter that the courts have such power." Cases from other jurisdictions are then cited and commented upon, following which the annotator says: "But a court should refuse to order the exhumation of a body for evidentiary purposes, except in those cases where there is a strong reason to believe that without such an exhumation and examination there will be a miscarriage of justice." The case of Salisbury v. Commonwealth, 79 Ky. 425, is referred to in the annotation and in which it is truthfully said that the power and authority of the court to make such an order was not raised therein. In every case that the writer has found wherein it was held that such power and authority existed in the trial court the appellate court was careful to say that such authority existed only in extreme cases, and could not then be exercised, except upon a "strong showing," and it is not

believed that any case can be found wherein such circumscribing limitations were not recognized and upheld. So much for the law. I will now briefly refer to the facts.

A bank had been robbed by defendant and two or three companions. They had escaped from the scene in an automobile. The deceased and one Charles Baird got into another automobile to pursue them, and they were armed, the deceased having a shotgun and Baird a rifle. Not far from the scene the pursuers came upon the robbers, and two shots were fired from each automobile, but the robbers succeeded in distancing the pursuers. The latter, however, within a short while overtook the robbers, who, possibly, had encountered some mishap, and, when within seventy-five or eighty yards of them, the pursuers and the pursued stopped their cars. Each of the pursuers attempted to alight from their car practically at the same time, but Baird, who had the rifle, fired a shot at the robbers, who had just shot at the pursuers, and that shot went through the glass in the door of the automobile of the pursuers on the side of the car where Baird was riding, and was fired by him as he was stepping from the automobile to the ground, and which he so hurriedly did in order to silence the firing of the robbers at him and Kirby before either of them was killed or wounded, and also, perhaps, for the further purpose to effect the capture of defendant and his co-criminals. The shots from the automobile of the latter were fired by shotguns, pistols, and rifles, and it is clear, from at least the testimony of Baird, that he did not at any time shoot the deceased, nor were any powder burns found on his body or any of his clothing, but which would have been almost inevitably true if Baird's rifle was the weapon that killed him. Furthermore, if deceased was so shot, there would be no bullet lodged in his body to be obtained by an autopsy; for the rifle that Baird had was of .45 caliber and one of extreme high power, and a bullet fired from it would have passed entirely through the body of deceased.

Under such facts, the attorney for defendant on March 22, 1930, two months and fourteen days from the finding of the indictment, claims to have filed in court a motion, signed only by himself, and to which he was not sworn, and in which it was said: "And by removing from said body the ball; that upon the ball being removed, it can be examined by the ballistic experts and said experts can conclusively determine from what

weapon the ball in the body of J. Robert Kirby was fired," etc. It was further stated in that written but unsworn to writing by the attorney that defendant was willing to deposit with the clerk of the court the cost incident to the exhumation, but it was not stated, by even the attorney in his alleged unsworn to motion, that defendant could, or would, produce any ballistic expert to make the examination referred to in the motion if a bullet was found, or that he would defray the expenses thereof.

The application for the order was made solely in the manner I have indicated. Nowhere in the record did defendant himself make application, either sworn to or not sworn to, for the order contended for. It requires no argument to show that the purpose of the order was to produce in court at the trial absent evidence on behalf of defendant, and because of which absence defendant was not ready for trial until the evidence could be legally procured; hence the application for the order. It is to my mind a case strictly parallel to an application to the court to procure the attendance of an absent material witness, or other material evidence, and I have yet to find any case upholding such right in the absence of the person on trial opening his mouth at some stage of the game and saying to the court, in legal form, that the absent evidence is and will be true as well as material to the case. In other words, I know of no ruling that will excuse the applicant for such an order (relating to the procurement of absent testimony) from saying anything in any manner in support of the application and to be permitted to put forward his attorney in the latter's unsworn statement to develop the grounds for the order, unless, perhaps, in the case of sickness or unavoidable absence of the applicant, when the attorney would, doubtless, be authorized to manifest the grounds. In this case, however, the defendant was either personally present, or easily accessible, when the alleged motion was made. But, if not so at the time, then he was present at the commencement of the trial and before the beginning of the introduction of testimony, and he could have then developed the grounds and made the "strong showing" required by the law so as to make out a case for the granting of the relief he sought.

How long, may it be asked, would a motion for a continuance, because of absent witnesses, or to discover and produce material evidence, be considered by this court where the defendant on trial made no affidavit nor any

186

written or sworn to motion, requesting a postponement or continuance to enable him to obtain the absent testimony, and only delegated that duty to his attorney, who could not know the facts except by hearsay from his client? The answer is that a painstaking search of our opinions and those of other courts fails to discover a single case where the court upheld such a motion, unless, perhaps, in the contingencies above referred to; i. e., sickness, or unavoidable absence of the defendant. On the contrary, every case says that the materiality of the testimony, the facts that would establish its materiality, as well as the reasonable certainty of its production if the motion should prevail, must be manifested by defendant himself, and not by his counsel as a substitute, and who, I repeat, is not presumed to know the facts as does the defendant on trial. In the Salisbury case defendant made and filed his affidavit as the basis for his motion to have the body of the deceased exhumed, and it was he who spoke upon his ability to pay or not to pay the expenses thereof, and in no case that I have found was he permitted to remain silent and let his attorney speak upon such matters from only secondhand information.

To establish the accuracy of the foregoing history of the motion that the court overruled, and only for which the judgment was reversed, reference is made to pages 10, 11, and 12 of the transcript brought to this court. On pages 10 and 11 will be found what purports to be the motion for the exhumation of the body of deceased. It is signed only by defendant's attorney, and on page 12 there is copied what purports to be the affidavit only of such attorney, but it is not sworn to before any officer or before any one purporting to be an officer, or, indeed, before any one at all; and neither the purported motion nor the purported affidavit is shown to be filed by any order of court on either of those pages or anywhere else in the record. Neither does the transcript show that either of those writings was marked "filed" by the clerk of the court, much less is there any order of the court to that effect, and statements to the contrary found in the opinion are clearly mistakes and misconceptions, as is also the one saying, "Some days before the trial defendant filed an affidavit setting out briefly the above facts and asking that the body of Kirby be exhumed at his cost," etc., since we have seen the fact to be that defendant filed no affidavit nor signed any motion at any time for such purpose.

The case, then, is one where the only showing made, even by the attorney, was a defective one to the 'effect that, possibly or probably, the bullet, if found in decedent's body would show that it was a rifle bullet instead of one fired from a pistol; and the evidence, as I understand it, is uncontradicted that a rifle was being fired at the deceased and his companion, Baird, by some one or more of the fleeing robbers, one of whom was defendant. In such circumstances, defendant, although he did not shoot that rifle, would be responsible for the consequences, though it was fired by one of his confederates. Therefore the ultimate and uncertain result sought to be accomplished upon such unsubstantial and insufficient showing was that defendant's attorney (not defendant himself) surmised, and possibly to some extent believed, that the fishing excursion that he sought by the granting of the order applied for might prove to be of some possible benefit to his client at the trial; but, if not, that then the advantages of a probable continuance (whatever that may be) would be obtained.

I do not hesitate to say that, if there had been manifested in this case, in due and legal form, that it was necessary in the interest of justice for the body of the deceased to be exhumed, the court should have ordered it done; but, in the absence of such manifestation, I am thoroughly convinced that the trial court correctly and properly overruled the motion, since the manifestation of the grounds therefor consisted only in the speculative surmises of defendant's counsel alone, and without one word from his client, either under oath or not under oath, in substantiation thereof. I will not dwell upon the reasons why the law limits the authority of the court to make such an order, since they cannot escape the intelligent reader (laymen or processional). But, notwithstanding those reasons, the law, out of its great solicitude to have justice administered, permits a body to be exhumed when it is clearly shown that justice may not be meted out without it, and which showing must always be made by the litigant applying therefor himself and not by a substitute. I will not comment upon the character, nature, and circumstances of the crime with which defendant is charged, and for which he was tried. To my mind there can be no doubt that he or one of his confederates killed an innocent man who was endeavoring to perform the obligations of an upright, peaceful, and law-abidding citizen, and to render all the

assistance he could towards exterminating from the country the marauding bands of highwaymen and robbers that for some years past have infested it.

Under the conditions as herein outlined, I am thoroughly convinced that the substantial rights of defendant were not prejudiced by the ruling of the court complained of and forming the only alleged error upon which the judgment is reversed, and for which reason it is my opinion that the judgment should be affirmed, and I, therefore, most respectfully dissent. Judge RICHARDSON joining me therein.