YOUNG v. COMMONWEALTH.
BRAY v. COMMONWEALTH.

Court of Appeals of Kentucky.

February 23, 1951.

Rehearing Denied June 22, 1951.

Hiram H. Owens, Barbourville, Isaac Turner, Hyden, John Lyttle, Manchester, for appellants.

A. E. Funk, Atty. Gen., Zeb. A. Stewart, Asst. Atty. Gen., G. R. Drinnon, Commonwealth's Atty., Middlesboro, for appellee.

CLAY, Commissioner.

Phil Young and Johnny Hack Bray, tried together, were each convicted of the murder of Ira Bailey and sentenced to prison for life. Their appeals have been consolidated, and the same questions are raised in each case.

The story begins at Charlie Sandlin's place in Leslie County on the afternoon of October 4, 1949. Ira Bailey and Bob Walker were apparently drinking at this roadhouse. Young and Bray, with two or three others, came into Sandlin's late in the afternoon. This aroused Walker and Bailey, and they created quite a disturbance. They ordered Young and Bray from the place, pulled out pistols, and began blazing away in a sort of indiscriminate shooting match. Young and Bray, with others, made a hasty exit, and managed to get away safely. It appears the shooting was without provocation.

Bailey and Walker left Sandlin's place, visited here and there, and apparently continued drinking. Sometime early in the evening they stopped at the home of Hiram Walker, where the drinking was continued. Around ten o'clock that night the persons in the house heard what sounded like a rock being thrown against the back porch. Bob Walker ran into the kitchen, and fired several shots. He then returned, and started out the front door. About that time a shotgun was fired from somewhere near the front of the house, and both Walker and Bailey were killed in this fusillade.

Both Young and Bray deny any connection with the shooting. Young said he went home shortly after the incident at Sandlin's and stayed there all night. Bray claims he went to the home of an uncle where he slept until 3:30 in the morning. Other witnesses give an entirely different version of their activities.

Elmer Sizemore testified: After the shooting at Sandlin's, he went with Young to the latter's home, and there Young procured "shotguns, rifles, and two pistols." Thereafter he went with Young to Bray's home, which is not far from Walker's house where the killings took place. Not long after, Young and Bray went out together. When they came back, he, Young and Bray started up the creek toward Walker's home. Young had a shotgun. Sizemore turned back, but the others went on, and in a few minutes he heard pistols and shotguns firing. The next morning Young came by to pick up his rifle which he had given Sizemore.

Homer Roberts testified: After the incident at Sandlin's, Young gave him a pistol. Young and Bray later went to the latter's house. While there Bray said he would "get even with Bob Walker or kill him." (Another witness testified he said: "I will shoot Bob Walker if it takes me five years.") Young, Bray and Sizemore went out in the direction of Walker's home carrying guns with them. Soon thereafter the shooting occurred. Then Young returned with a shotgun and said: "Let's get out, they are shooting up everything."

Foy Feltner testified: He went with Young and Bray to Bray's house before the shooting. Young and Bray "went out and talked and came back, and said, 'let's go.'" They started up the road in the direction of Hiram Walker's home. Young told the witness to wait until he came back. Sizemore, Young and Bray each had guns. A few minutes after they left, Feltner heard the sound of pistol and shotgun firing. Soon after Young came back, and he had with him a shotgun. Young expressed the wish

to leave the vicinity as somebody was "shooting up everything." Young had given Bray a pistol before the occurrence.

Gracie Couch, who lived next door to Hiram Walker, testified she heard more than one person come by her house just before the shooting, and she identified one of them as being Bray by the sound of his voice. After the shooting she heard someone running back by her house.

There was evidence that Young owned an International Truck with a special fuel tank on the body. Several witnesses testified that before the killings took place a similar truck was seen near Hiram Walker's house.

There was evidence that Bray had done a lot of drinking during the afternoon and evening, and Young at least had some beer.

■ Appellants' first contention is that they should have had a directed verdict. They complain bitterly of the testimony of Sizemore, Feltner and Roberts because these men were indicted for the same offense, and they argue that these witnesses, with hope of leniency on the part of the Commonwealth, have testified falsely against appellants solely to save their own skins. This is a question of credibility which addresses itself to the jury, and not to this Court. We cannot as a matter of law reject the testimony of these men.

■ Appellants further insist that all the evidence in the case was circumstantial, and a conviction should not be permitted to stand unless such evidence was strong enough to exclude every reasonable hypothesis of innocence. They say the proof raises nothing more than a suspicion of guilt, and it is reasonable to believe that Walker and Bailey shot themselves. The testimony we have reviewed above does not justify such a conclusion.

A motive for the crime, revenge, was established because Walker and Bailey had committed an unprovoked assault on Young and Bray at Sandlin's place. There was substantial evidence: that Young and Bray stayed together until the time of the shooting; that Young procured additional arma-ment; that Young and Bray were in the vicinity of Walker's home just before the shooting; and that they started in the direction of Walker's home carrying arms. The circumstances pointed directly to the participation of Young and Bray in the killing of Bailey.

The jury heard the witnesses. They heard Young and Bray testify that they were not anywhere in the vicinity when the shooting occurred. There was positive testimony contradicting their alibis, which, if believed, excluded the hypothesis of innocence. The jury was justified in concluding that appellants went to the Walker home for the purpose of killing Walker and Bailey, and actually did so. They were not entitled to a directed verdict.

■ Appellants next complain of Instruction No. 6, which in substance told the jury: if the appellants or those acting in concert with them first began the difficulty by throwing something against Walker's house, or otherwise making a demonstration, then if the jury believed appellants killed Bailey, they should not be excused on the ground of self-defense. Apparently appellants contend that there was no evidence to support this instruction. Clearly there was. Several persons testified the disturbance was started by someone throwing something against the house, and there was evidence this was the plan of attack. The instruction was based on proven facts, and was a proper modification of the theory of self-defense, which was submitted to the jury in the preceding instruction.

■ Some complaint is made of the introduction in evidence of weapons found at Young's house by a state patrolman, on the ground they were picked up without a search warrant. However, the officer had a warrant for Young's arrest when he entered his house looking for him. It is the accepted rule that while a peace officer is executing a criminal process he may take possession of evidence discovered on the defendant's premises. See Commonwealth v. Phillips, 224 Ky. 117, 5 S.W.2d 887, and Sexson v. Commonwealth, 239 Ky. 177, 39 S.W.2d 229.

974

Appellants lastly contend that they did not have a fair trial because of the mistreatment of the jury. Affidavits were filed indicating that several jurymen were sick from diarrhea, and that the toilet accommodations were not satisfactory. It also appears the Judge sent the jury back twice to reach a verdict when, it is contended, they were tired and wanted to go home. We think these matters addressed themselves to the discretion of the trial Court, and we find nothing in the record which shows an abuse of discretion or would require the Court to discharge this jury on these grounds.

The judgments are affirmed.