## BLACKMORE v. GRANBERY.

### (*Nashville.*     March 5, 1897.)

1. BILLS AND NOTES. *Parol agreement that principal shall be liable as surety enforceable.*

   A parol contract, whereby the parties agree that the ostensible principal shall be liable only as surety on a note, may be proved and enforced in equity. (*Post, pp. 279, 281, 282.*)

2. COLLATERAL SECURITY. *Application of proceeds.*

   Where notes are deposited by a debtor "as collateral security for any of my [his] indebtedness," their proceeds, when collected and held without appropriation by the creditor, will be applied by the Court to and among the several debts secured, according to the principles of equity. (*Post, pp. 280–285.*)

3. SAME. *Same. Example.*

   The Court will direct the application of the proceeds of a general deposit of collaterals, in the absence of any valid direction by the creditor, to the debt which was the oldest, and on which security had been given, in preference to younger debts for which there were no sureties. (*Post, pp. 280–285.*)

   Cases cited and approved: Bussey v. Gant, 10 Hum., 238; Mason v. Smith, 11 Lea, 67; Fulton v. Davidson, 3 Heis., 648; Lippman v. Boales, 16 Lea, 283; 95 Am. Dec., 291; 29 Am. Dec., 687; 37 Am. Dec., 623; 32 Barb., 23; 2 Stark., 101.

   Cited and disapproved: 6 Cranch, 8; 15 Conn., 437.

---

### FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. JAMES TRIMBLE, Sp. Ch.

CHAMPION, HEAD & BROWN for Blackmore.

A. D. MARKS for Granbery.

WILKES, J. The bill is filed in this cause to recover of W. L. Granbery a note for $3,615.93 and interest. This note is made by Granbery to the order of Sparrel Hill, and by him indorsed. The bill also seeks to recover upon a note made by John W. Childress, payable to Granbery, and indorsed by him, pledged to secure the first-mentioned note.

The Chancery Court gave judgment on the Childress note, and directed the proceeds to be applied to the recovery upon the Granbery note, so far as necessary, the balance to be paid to Granbery. That Court also gave judgment on the Granbery note for $2,398.71, balance after allowing credit for $969.26, arising out of a pledge of certain collateral by Hill.

Granbery appealed from the decree so far as it gave judgment against him for any amount, and complainant appealed from so much of the decree as directs credit for the $969.26, or any other amount, on the Granbery note. The judgment as to Childress is not complained of and not appealed from.

The Court of Chancery Appeals reversed the Chancellor, and held that Granbery was entitled to have so much of the collateral pledged by him applied to his debt as was necessary to pay his debt, and to have the Childress recovery delivered up to

him, and it was so decreed, and complainant has appealed to this Court, and has assigned errors.

The Court of Chancery Appeals finds, as facts, that while the note in controversy appears to have been Granbery's note, and was signed by him as maker and by Hill as indorser, still, as a matter of fact, it was Hill's note, indorsed by Granbery, and that Hill and Granbery had agreed that Granbery would appear as maker and Hill as indorser, and that this agreement was known to Porterfield, the cashier of the bank of which complainant is receiver, and the note was by him accepted and discounted for the bank, and he agreed for the bank to take and carry the note in that shape. A written agreement to the effect stated was made between Granbery and Hill, and while it was not delivered to the bank or to its cashier, still the cashier had full knowledge of the facts. The note was renewed from time to time, the discount being added into the face of the note. One of these renewals was made after the expiration of the year the note was to run, and, upon this occasion, Mr. Hill procured the renewal and paid the discount to the cashier in the presence of the president. All the transactions had by Mr. Granbery in regard to the note were with the cashier and the president. After this note was made Mr. Hill became indebted to the bank, both as principal and indorser, in various other notes and amounts, but when this note was executed that bank had no other paper against him.

When the bank failed Mr. Hill was indebted to it some $19,000, besides the note now in suit. He was also liable as indorser for some $6,000. After the note in suit was made, Mr. Hill deposited with the bank four notes on the Duncan Hotel Company for $20,000. They were placed in an envelope, which was indorsed, "These notes are deposited with the Commercial National Bank as collateral security for any of my indebtedness," dated June 23, 1892, and signed "Sparrel Hill."

Upon these collateral Duncan House notes, the receiver of the bank has collected $9,718.25. It appeared that the receiver had recovered two judgments against the hotel company—one for $21,356.66 on the notes in question, and on other notes held by him against the hotel company, for $8,256.56; that executions were issued on both these judgments and levied at the same time on the furniture of the hotel company, which was sold for $10,000 and netted the sum before stated of $9,718.25.

Hill contends that he is entitled to have this whole fund, thus realized, applied to the judgment for $21,356.66, and the receiver insists that it should be prorated between the two judgments, and this matter is being litigated between Hill and the receiver in a separate action, and does not necessarily affect this litigation.

The receiver has made no application of the funds in his hands, but is holding them to await the decision of the matters in controversy.

The Chancellor held that the arrangement between Hill, Granbery, and Porterfield, the cashier, was not binding on the bank; that the pledge of the notes inured equally to the security of all notes on which Hill was indorser, as well as those on which he was maker; that notice could be given to the bank of the real status of the parties between themselves, and the equities be worked out, as between all the parties, at any time before final distribution of the proceeds of the collateral; that the Granbery note is entitled to contribution out of such collateral proceeds only *pro rata*, and not to payment in full; and that the fund to be distributed was only $6,988.30, and not $9,718.25, after prorating the proceeds of the sale of hotel furniture between both judgments, and that upon the basis thus fixed the credit to go upon the Granbery note was $969.26. The Court of Chancery Appeals held—

*First.*—That the collaterals were to be treated as a general pledge to secure all of Hill's indebtedness and subject to be applied to any of such indebtedness, whether as principal, security, or indorser.

*Second.*—That there has not been any direction given by Hill as to the application of the proceeds of the collateral, and that the receiver had made no such application of the collateral when the bill in this cause was filed, and that whether Hill succeeds in his contention or not is not material, as there will be in any event $6,988.30 to be applied as between Granbery and the bank. The Court of

Chancery Appeals finds as a fact that the bank officials not only knew of the relation of Hill and Granbery between themselves on this note, but they agreed to the same, and that the bank had full notice of the facts, and that the true relation of the parties could be made to appear by parol evidence (citing Jones on Pledges, 518; Randolph on Com. Paper, Sec. 910), and that as between these parties, Hill and the bank, Granbery occupied the relation of surety, and not principal, on the note.

The Court held, further, that there having been no application of the proceeds of the collateral by the parties, the law will apply it (1) to the oldest debt, in which event it must go to the note in controversy; (2) that it will apply it to the relief of the surety, in which event it will also go to the note in suit.

In the case of the *United States* v. *Kirkpatrick et al.* the Supreme Court of the United States held (9 Wheat., 720), that sureties are entitled to the enforcement of this rule in regard to the appropriation of payments. Judge Story, delivering the opinion of the Court, said: "The general doctrine is that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it. If both omit it, the law will apply the payments according to its own notions of justice." And in that case the payments were applied to extinguishing the debts according to priority of time.

The authorities are conflicting upon this matter of the application of payments, some of them holding that the application must be made in the interest of the creditor to the most precarious debt, as in *Field* v. *Holland,* 6 Cranch, 8; *Stanford Bank* v. *Benedict,* 15 Conn., 437. And this is the doctrine of the common law on this subject. The current of authority is to apply the rule as stated by Mr. Story. See *Pickering* v. *Day,* 95 Am. Dec., 291; *White* v. *Nubb,* 29 Am. Dec., 687; *Smith* v. *Loyd,* 37 Am. Dec., 623 and note. And this is the doctrine of the Roman or civil law in such cases, and our own authorities are in accord with this civil law rule. *Bussey* v. *Grant,* 10 Hum., 238; *Mason* v. *Smith,* 11 Lea, 67; *Fulton* v. *Davidson,* 3 Heis., 648; *Lippman* v. *Boales,* 16 Lea, 283.

In the leading case of *Bussey* v. *Gant,* 10 Hum., 238, reference is made to *Pattison* v. *Hull,* 3 Cowen, 747 and note, where the cases are reviewed and many citations are made to English cases, where, as in our State, the rule of the civil law is followed. Among other cases is cited 2 Stark. Rep., 101, to the effect that payments will be, applied to discharge debts for which a surety is bound, rather than to one where the debtor has given no surety, on the principle that the debtor's honor is more concerned in debts on which he has given security than in those where he alone is bound, and to an old debt before a new one. 1 Stark. Rep., 153.

In Story's Eq. Jur., Sec. 459*c,* it is said: "The

application ought, rather, to be made to the debt for which the debtor has given security, than to those which he owed singly, because thereby the debtor discharges two obligations—to his creditor, to wit, to his principal, and to his surety, whom he is obliged to indemnify."

In the case of *Fulton* v. *Davidson,* 3 Heis., 648, this rule was applied, and the fund was appropriated to the debt on which John S. Fulton had given security, and which was the oldest debt, in preference to younger debts, and on which there were no sureties.

The rule is thus stated in *Bredenbecker* v. *Lowell,* 32 Barb., 23: "Pothier lays down the rule that the application ought to be made to the debt for which the debtor has given securities, rather than to those he owes singly. The honor of the debtor is concerned in such payments." Citing Story's Eq. Jur., 459*c; Marryatt* v. *White,* 2 Stark., 101.

In Pennsylvania, where the civil law does not prevail, it is still held that payment will be made to the oldest debt.

In the case of *Purdee* v. *Markle,* 11 Pa. St., 555, the Court says: "The latter rule [to wit, to apply to the most precarious security], will prevail whenever the interest of the creditor requires that it should, but not to the prejudice of a surety, who may insist on an appropriation under the first rule stated [to wit, the oldest debt], and hold himself

bound or discharged accordingly." 9 Watts, 386. See, also, *Pierce* v. *Sweet*, 33 Pa., 151.

Mr. Daniel, in his work on Negotiable Instruments, 1252, says, in effect, that payments will be applied to the unsecured, in preference to the secured, debts, unless the latter are secured by a surety, in which case application will be made for his relief. To the same effect, see Randolph on Com. Paper, 1503, 1494; Tiedeman on Com. Paper, 377; Brandt on Suretyship, 330.

The Court of Chancery Appeals having held that Granbery was entitled, under these rules, to have a sufficient amount of the proceeds of the collateral applied to the debt upon which he was, in fact, surety or indorser, though ostensibly maker, and to have his Childress debt delivered up to him, we are of opinion there is no error in their holding, and their decree is affirmed.