FIRST NATIONAL BANK OF STUTTGART, ARKANSAS, v. HARRY E. BOVAY.

Western Section. July 23, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

John L. Ingram and Ewing, King & King, all of Memphis, for appellant.

Holmes, Canale, Loch & Glankler, of Memphis, for appellee.

OWEN, J. Harry E. Bovay, the defendant, has appealed from a decree rendered against him in the Chancery Court of Shelby County, in the sum of $2458.12 and costs of suit. The decree was entered February 16, 1931.

The complainant, hereinafter called the bank, sued the defendant on his promissory note, which he had executed to one James A. Henderson. It appears that Henderson had died, and that Henderson was, at the time of his death, heavily indebted to the complainant bank. The debt or note sued on was originally the debt of Henderson. Henderson had executed a note to the defendant, Bovay, for certain farming implements or farm machinery, which note originally was for $1080, given by Henderson to the defendant, and the defendant endorsed the note to the complainant bank. Henderson's indebtedness to the bank became so heavy that the bank refused to carry the note now in controversy, except the defendant should execute his note and let Henderson be the endorser.

The complainant brought suit against the defendant and Henderson in the Courts of Arkansas; this was compromised by the bank taking defendant's note endorsed by Henderson, and Henderson gave a trust deed on his rice crop. It appearing that Henderson was a large rice grower at Stuttgart, Arkansas.

The original $1080 note was executed June 5, 1920. The suit instituted in the Courts of Arkansas on said note for $1080 was begun October 14, 1921. The defendant in that suit sought by cross-complaint to recover of the complainant, the bank, the sum of $490, which he insisted was due him for certain services he had rendered to the bank.

On March 20, 1922, the parties to the litigation in the Courts of Arkansas entered into an agreement wherein all matters pending between the parties to said litigation were compromised and settled. And the defendant executed a note endorsed by James A. Henderson, which note was in favor of the complainant bank for $1272, and which note has been renewed a number of times. The note has never been paid and it is the basis of the present litigation.

At the time of the settlement of the matter pending in the suit in Arkansas, James A. Henderson executed to the complainant bank, a mortgage on his rice crop to be grown during 1922, on a tract of land described in the mortgage, which mortgage was to secure a note of $500 and any further advances made by the said bank to the said Henderson for the purpose of cultivating and harvesting said rice crop. The bank was to apply the proceeds secured from said rice crop upon the payment of its $500 note and any other advances it made during 1922. And out of the surplus it was to apply the proceeds of the surplus, if any arose from said rice crop, in the following manner; three-fourths of said surplus or proceeds to be applied on a note of $3800, executed by James A. Henderson and one-fourth of the surplus to be applied to the Bovay note for $1272.

It further appears that there was no surplus from the rice crop. Rice in 1922, like cotton, took a great tumble in the market. Rice that had sold for $3 per bushel in 1921 sold for 22c per bushel in 1922.

The defendant has assigned eight errors on this appeal. It is insisted by these errors:

(1) That the Court should have held that the defendant and the bank entered into an agreement in March, 1922, whereby the defendant's liability on the note in question was to be cancelled in consideration of the defendant cancelling the claim set out in his cross-petition against the bank.

(2) Raises the question of the crediting of the rice crop in 1922, according to the agreement between the defendant and the bank.

(3) The defendant complains of the bank collecting a $10,000 insurance policy on Henderson's life, and the proceeds of this policy should have been applied on the debt sued on.

By assignments four, five and six it is also insisted that the defendant should have received credit for the $10,000 life insurance, or at least the life insurance proceeds should have been pro rated as to all of Henderson's debts held by the bank, including the note sued on.

By the seventh assignment it is insisted that by the equities of this case, the bank rather than defendant should stand the loss occasioned by Henderson's failure to pay his entire indebtedness.

By the eighth assignment its insisted, "that the Court erred in finding and holding that the bank did not violate its agreement not to release any security of Henderson's held by the bank."

It appears that the complainant bank had a second mortgage on 320 acres of land owned by Henderson, to secure its indebtedness in addition to the insurance policy, and this cause was retained in Court until the mortgage on the 320 acres was foreclosed. And it

appears that there was nothing to be applied on the second mortgage held by the bank; that the 320 acres was consumed by the first mortgage.

Chancellor DeHaven in disposing of this case filed a very lengthy opinion wherein he set out in full the facts, and as we concur in his finding we will set out his opinion in our opinion.

"This is a suit on a promissory note for $1,970, executed by defendant, Harry E. Bovay, to the order of complainant, First National Bank of Stuttgart, Arkansas, on May 15, 1926, due and payable December 17, 1926, with interest at the rate of 8% from date, together with attorney's fees, should the note be placed in the hands of an attorney for collection. This note was executed and payable at Stuttgart, Arkansas, and it is shown in the record that the rate of interest provided for is legal in that State. The provision for attorney's fees is contrary to the laws of Arkansas. Said note is a renewal note.

"Defendant admits the execution of the note sued on, but denies any liability thereon. He sets up in his answer that on June 5, 1920, one James A. Henderson executed his note in the sum of $1,080, payable to the order of defendant, due ninety days after date. That he, defendant, negotiated said note to complainant, that at the time of purchasing said note, and at all times, thereafter, the complainant had certain collateral securities in its hands belonging to the said James A. Henderson; that by subsequent verbal agreement made between him, defendant and complainant the complainant agreed to and did look to James A. Henderson and the collateral securities in its hands for the payment of said note; that this release of defendant was based upon the valuable consideration, to-wit, the cancellation of a debt approximately $750 owing defendant by complainant on account of commissions earned in the sale of certain assets of one Scofield O'Hair by defendant at the instance of complainant.

"When the note of June 5, 1920, executed by James A. Henderson to the order of defendant, and sold by defendant to complainant, matured it was not paid. The maker was not in a position, financially, to discharge the note, due to the period of heavy deflation. On November 14, 1921, complainant sued Henderson and Bovay, defendant here, on said note, in the Circuit Court of Arkansas County, Arkansas. Defendants to that suit appeared and filed separate answers. Bovay set up as a defense that at the time he discounted said note to the plaintiff, it was agreed between him and the plaintiff that a certain mortgage held by plaintiff on a large amount of property owned by Henderson, given as security not only for all indebtedness then owing the bank by Henderson,

but also as security for any notes that the plaintiff might purchase bearing the signature of Henderson, had been released of record by the plaintiff, thereby preventing defendant from sharing in the security of said mortgage. ''That by virtue of the satisfaction of the mortgage aforesaid this defendant has become released from all obligations incurred by him as endorser upon the said note.'' The defendant, Bovay, sought by cross complainant, to recover of the plaintiff the sum of $490, as follows:

'' 'Further answering, and as a cross-complaint against the plaintiff, defendant says that in the Spring of 1920, the plaintiff by its cashier, C. W. Hogan, employed the defendant to sell for it a large number of mules, and also a tractor and a Ford car. That as compensation for such services the plaintiff promised and agreed to pay to this defendant 20% of the total amount realized from the sale of said mules, and 25% of the amount realized by him from the sale of said tractor and Ford car. That defendant sold said mules for the sum of $1,200 and said tractor and Ford car for $1,000 and paid said sums to this plaintiff. That notwithstanding such fact, the plaintiff has paid no part of the commission aforesaid, and that it is now indebted to this defendant in the aforesaid sum of $490 and interest.'

''On February 20, 1923, the following order was entered in said suit: 'Now on this day this cause is settled and dismissed.' Said settlement was in writing dated March 20, 1922, is signed by all the parties, and is Exhibit 'D' to the deposition of E. C. Benton. After setting up the bringing of said suit, on said note, the filing of separate answer by Bovay denying liability on the note, and alleging by way of cross-complaint the liability of the bank to him for $490, the filing of separate answer and cross-bill by Henderson alleging an indebtedness from the bank to him of $2,500 for devoting his time to the looking after a rice crop from April, 1919 to April, 1920, and a $50 claim by Henderson for certain harness, the following appears:

''Whereas all parties hereto are desirous of settling this law suit and to that end have agreed as follows:

'' 'The First National Bank is to accept a renewal note for the total amount due it on its $1,080 note and interest thereon and costs of the suit, said note being executed by James A. Henderson payable to Harry E. Bovay and endorsed by said Bovay over to said bank, and this suit, together with each cross-complaint, is to be dismissed, upon the payment to the said Henderson of $350 in full settlement of any and all claims arising herein.

'' 'It is agreed and understood that this settlement when consummated shall be construed as a full and complete settlement of any

and all claims arising out of any of the matters set up in either of said cross-bills or of any claim which the said Henderson and Bovay might be able to assert out of anything or fact or statement of any set of facts contained in this suit and to that end, this settlement is made, and in making this settlement the said Bovay and the said Henderson released said bank from any and all claims or demands whatsoever, not only in connection with the matters or things set up in the answer or cross-bill of each of the said parties, Henderson or Bovay, but also any and all demands which either of said parties may have had, or now have against said Bank regardless of kind or character.'

"On March 17, 1922, three days prior to the date of the above settlement, the Bank, Henderson and Bovay entered into the following written agreement:

" 'That after the first mortgage made by James A. Henderson to the first National Bank aforesaid, on his interest in rice crop grown during the year 1922 on (here land is described) covering a note of $500 and on further advance made to the said James A. Henderson by said First National Bank during the year 1922, is paid in full, including all interest, then the balance of the proceeds of said James A. Henderson's rice crop which is mortgaged to said bank, shall, when received by said bank, be pro rated between the note of James A. Henderson in favor of the First National Bank for $3,800 and the note of Henry E. Bovay in favor of the First National Bank for $1,272 and endorsed by James A. Henderson as follows:

" 'One-fourth of said proceeds to be applied to the Bovay note and three-fourths of said proceeds to be applied to the James A. Henderson note, of $3,800.'

"This note was signed on behalf of the Bank by 'E. C. Benton, Cashier.' The agreement of March 17, 1922, was made by the parties, that of March 20, 1922, was made by the lawyers in the case.

"The situation was that the parties to the suit on the $1,000 note settled their differences on the basis of Bovay giving his note for that amount plus interest, and costs of suit in all $1272, endorsed by Henderson, to the bank. The Bank agreed that the proceeds arising from the 1922 rice crop grown by Henderson, after first paying the first mortgage on said crop, and a note of $500 and further advances made, should be pro rated one-fourth on the Bovay note and three-fourths on the Henderson's note of $3,800. The record shows that there was no balance out of the said proceeds from the rice crop to apply on said notes and did not even reach the $500 note. The Bank agreed, in said contract, to pro rate the

proceeds of the rice crop for the year 1922, if anything was left over after making the payments specified; it did not agree to apply to the Bovay note the proceeds arising from any other security given it by Henderson.

"Defendant here, says in his deposition, in effect, that he had a claim of $750 against the bank and that after the bank brought suit on the $1,080 note, he agreed to cancel his claim against the bank and the bank, through E. C. Benton, Cashier, agreed to cancel his liability to the bank on the said note, and that this agreement was omitted from the written settlement. E. C. Benton testifies in the case and directly denies any such agreement. The burden of proof, of course, is on Bovay as to the existence of any agreement, releasing him from liability on said note. I do not think he has sustained this burden. In fact, the preponderance of the evidence on this question is with the bank.

"Bovay's claim against the bank was not $750, but only $460. The record shows that Henderson's financial condition was bad. The price of rice had declined from some $3 per bushel to 22 cents a bushel. Henderson was indebted to the bank, why the bank should agree to release Bovay from any liability on the note, totaling some $1264.50, is not explained. Benton denies any such agreement. The written contract of settlement of March 20, 1922, is carefully drawn and is specified as to all details. It purports to settle all questions between the parties as to the $1,080 note and credits thereon. It is now sought to set up any alleged oral agreement by the terms of which Bovay was not to be liable on his note, mentioned in agreement of March 17, 1922. Bovay renewed said note several times. Each renewal included interest to date. Bovay's contention that the bank had him execute the original note, with the endorsement of Henderson, because the Bank had reached the limit it could loan Henderson under the Federal banking act, is not supported by a preponderance of the evidence in the case. The bank could have proceeded with its suit and on recovering judgment against Bovay have collected from him by execution. He was in business in Stuttgart and on his own admission had some $40,000 due him on accounts and bills receivable. This would have lowered Henderson's liability to the bank. In any event, with only arrangement whereby he was executing a promissory note for a very substantial amount, without written contract or memorandum, showing his non-liability thereon and the Bank denying such agreement, the inevitable result is that I must find that no such agreement or arrangement was made. Bovay insisted, of course, on the occasion of the various renewals of the note that the bank collect out of Henderson, as it was originally, as between Bovay and

Henderson, Henderson's debt. The Bank was not averse to this if it would be done with safety to itself and without releasing any one, and the renewals were made with that understanding. The bank felt it had a good note with Bovay's name on it, endorsed by Henderson, and so consented to the various renewals and agreed with Bovay not to release any security given by Henderson until this note was paid. No mortgages were released, except crop mortgage renewed from year to year.

"It is insisted by defendant that payments made on various mortgages executed by Henderson and given to secure the bank should be pro rated three-fourths on Henderson's obligations and one-fourth on defendant's note. There is nothing in the record to support such insistence. The agreement of March 17, 1922, bound the complainant here to pro rate the proceeds of Henderson's rice crop of 1922 between Henderson's then indebtedness of $3,800 and the Bovay note, after payment of the items set forth in the agreement, but I find no other or subsequent security given by Henderson to the bank. Furthermore, the record does not show any consideration for such an agreement.

"At the time of Henderson's death he was obligated to the bank to the amount of approximately $15,000, including the note here sued on. In addition to this, the Bank advanced $1,700 to Henderson's estate to make 1929 crop. This advancement was secured by a mortgage on the crop. It appears that Henderson assigned a policy of life insurance, on his own life, for $10,000 to the bank as security for his indebtedness to it. On April 15, 1929, the bank collected this insurance and applied it on Henderson's indebtedness and it lacked $2,300 of paying out, not including the note here sued on. This balance of $2,300 represents the balance due on a note of $2,400 signed by Henderson and his wife and secured by a first mortgage on eighty acres of land owned by the wife. Said policy of insurance was taken out by Henderson in the year 1923 and assigned to the bank in May of that year. Henderson died March 16, 1929.

"The Bank immediately on collecting the insurance applied it to the unsecured indebtedness of Henderson. It is not shown that Henderson directed that the proceeds of the insurance should be applied first to obligations on which he was endorser. The creditor is promptly made application of this money. The note here sued on is the obligation of Bovay. He is the maker of the note. He sold Henderson merchandise and took his note. He took the note around to the bank and discounted it and received the money thereon. Later, when, sued, as endorser, he made a settlement of the suit on the basis of giving his own note, endorsed by Henderson, for the principal and interest and costs of the suit. An out-

standing fact in the case is that Bovay procured money from the bank and has never repaid one dollar of principal or interest. Certainly, the equity of the case is that Bovay should stand the loss incident to Henderson's failure to pay for the merchandise sold him by Bovay, rather than the Bank should stand such loss. Now, the Bank applied the proceeds of the insurance to the direct obligations of Henderson. The rule in this State is that when the debtor does not direct specific application of payment, the creditor may apply it; where no appropriation is made by either party the law will apply it according to the intrinsic justice of the case. Weaver v. Ogle, 2 Tenn. App., 563.

"It appears that the bank acquired in the Spring of 1923, as security, a mortgage on 320 acres of land in Prairie County, Arkansas, subject to a first mortgage for $10,000. This land is shown to be now worth about $30 per acre.

"Thus it would lack $400 of paying the first mortgage. The bank holds a first mortgage on eighty acres of land given specifically to secure a note of Henderson and wife for $2,400, at a valuation of $30 per acre, this security would pay the obligation and leave $100 balance due on note of $2,300.

"Benton testifies that the bank agreed with Bovay, at the various times the note was renewed, that it would not release any security held by it against Henderson until this note was paid. As noted above, the bank holds a second mortgage on the 320 acres referred to, subject to a first mortgage of $10,000. It seems doubtful that the land would bring the amount of the first mortgage, but the bank admits it agreed not to release any security until the note sued on is paid. This meant that the bank after being paid would not release a security until this note was paid. It has released no security, and cannot release said second mortgage until this note is paid. The only indebtedness of Henderson's now due the bank, outside of the note here sued on, is the $2,300 secured specifically by first mortgage on the 80 acres of land. Defendant is not entitled to any benefit of this mortgage, because given by Mrs. Henderson specifically to secure the $2,400 note. However, he is entitled to the full benefit of said second mortgage.

"The result is that defendant is liable on the note here sued on, with interest from date, but must be given the benefit of the second mortgage on said 320 acres of land. Until said second mortgage is foreclosed, and the credit, if any, this note should receive is ascertained, it is not possible to adjudicate the amount due on said note.

"January 21, 1930.        D. W. DeHAVEN (Chancellor)."

The defendant filed a petition to rehear, which was overruled, and perfected his appeal. The cause was ably argued at the bar by counsel for both parties.

The defendant insists that this case is controlled by Blackmore v. Granbery, 98 Tenn., 277, 39 S. W., 229.

In the Blackmore case, supra, it was held "that the Court will direct the application of the proceeds of a general deposit of collaterals, in the absence of any valid direction by the creditor, on the debt which was the oldest and on which security had been given, in preference to younger debts for which there were no securities."

It appears in the Blackmore case, that suit was brought upon a note executed by W. L. Granbery, who had executed the note for his law partner, Mr. Sparrel Hill; it was really Hill's debt. Hill had placed certain notes as collateral with the bank, which were endorsed. "These notes are deposited with the Commercial National Bank as collateral security for any of my indebtedness, June 23, 1892, and signed Sparrel Hill."

The Court held that the collaterals were to be treated as a general pledge to secure all of Hill's indebtedness and subject to be applied to any of such indebtedness, whether it was principal, surety or endorser.

In the instant case we have no such direction by Henderson to the complainant bank, that the proceeds of the insurance policy should be applied on all of Henderson's indebtedness, whether principal, surety or endorser. Where there is no direction to the bank as to how it shall apply the collateral, the rule is as follows:

"The general rule in this state in respect to the appropriation of payments is that a debtor owing different debts to the same person has a right to apply the payments at a time when made to either debt and if he fails to do so and the payment be general, the creditor may apply it." . . . "The law is further, however, that when either party has made or directed an application of a payment such application cannot thereafter be changed without the consent of both the payor and the payee, especially to the detriment of a third party." Weaver v. Ogle, 2 Tenn. App., 563; Dean v. Womack, 2 Chy. App., 82.

We are of the opinion that the equities of this case are with the complainant. We have given due consideration to the defenses made by the defendant, and we do not think that he has sustained any of them.

It results that all the assignments of error are overruled and disallowed. The judgment of the lower Court is affirmed. The complainant will recover of the defendant and his surety on ap-

peal bond, the amount of judgment recovered in the Court below, with interest thereon from the date of said judgment and all the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.