IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2018 Session

## LAFARGE NORTH AMERICA v. WARREN MILLS ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002224-10    Mary L. Wagner, Judge**

_____

### No. W2017-00431-COA-R3-CV

_____

The trial court granted summary judgment in favor of Appellee, finding that the guaranty agreement Appellant executed was enforceable. At the time Appellant executed the guaranty, Choctaw II, LLC ("Choctaw"), a company of which Appellant was a member, owed approximately $275,000.00 to Appellee on an open credit line, which was guaranteed by William Carrier, another owner of Choctaw. Mr. Carrier filed bankruptcy, and Appellee closed the open credit line for lack of guaranty. In an effort to continue to purchase materials from Appellee, Appellant signed a guaranty. After Appellant signed the guaranty, Appellee sold an additional $75,000 worth of goods to Choctaw, and Choctaw paid Appellee approximately $79,000 after Appellant signed the guaranty. Appellee applied these payments to the $275,000 balance and then sought payment for the $75,000 in goods from Appellant. The trial court held that Appellee properly applied the payments to the older debt. We hold that the guaranty agreement is enforceable. However, as to the application of the payments, we hold that Appellee was required to apply the $79,000 to the debt guaranteed by Appellant. Because the payments were sufficient to pay off the $75,000 in goods, Appellant owes nothing to Appellee under the guaranty and is entitled to summary judgment. Reversed and remanded for entry of summary judgment in favor of Appellant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and ARNOLD B. GOLDIN, JJ., joined.

Warren Mills, Collierville, Tennessee, appellant, pro se.

Earl W. Houston, II, Adam Jacob Eckstein, Memphis, Tennessee, and Craig A. Knot (pro hac vice), Chicago, Illinois, for the appellee, LaFarge North America.

# OPINION

## I. Background

Appellee LaFarge North America ("LaFarge") is a Maryland Corporation in the business of selling cement. LaFarge does business throughout the United States. In Memphis, LaFarge sold goods to Choctaw. which was owned by Henry Carrier, Michael Carrier, and Appellant Warren Mills. LaFarge opened a credit account for Choctaw, which account was originally guaranteed by William Carrier under a January 2008 guaranty agreement. Under the agreement, Choctaw was to pay any balance "by the last day of the month following the month in which those goods were shipped." In 2009, Choctaw owed $266,557.14 on its credit account with LaFarge. The same year, the original guarantor, William Carrier, declared bankruptcy.

Mr. Mills then appealed to LaFarge to continue selling goods to Choctaw on credit. To this end, on December 22, 2009, Mr. Mills signed a credit application and guaranty agreement, which LaFarge contends it accepted on the same date. The agreement Mr. Mills signed was identical to the one Mr. Carrier had signed. In relevant part, the agreement provides that, "In consideration for sales to applicant on open account, the undersigned individually and unconditionally guarantees to LaFarge and its successors, the prompt payment of said account if not paid when due by applicant." The agreement further states that, "All signatories below execute this agreement on behalf of Applicant as well as individually." Like the 2008 agreement, the 2009 agreement provided that payment was due by the end of the month in which the goods were shipped and further provided that Choctaw, or its guarantor, would pay 18% annual interest on late payments in addition to LaFarge's costs of collection.

Between December 2009, when Mr. Mills executed the guaranty, and March 2010, when Choctaw ceased operations, Choctaw purchased $75,990.20 in goods from LaFarge and made payments of $79,890.94 during this same period. LaFarge applied these payments against Choctaw's oldest debts. By the end of April 2010, Choctaw had a remaining balance of $275,435.09 on its credit account, which amount included principal charges of $262,656.40 and finance charges of $12,778.69 through April 30, 2010.

On April 30, 2010, LaFarge filed suit against Choctaw, William Carrier, and Mr. Mills alleging breach of contract against Choctaw and breach of guaranty against Messrs. Carrier and Mills. By its complaint, LaFarge sought to recover, from Choctaw and/or Mr. Carrier, the $275,435.09 (principle and interest, see *supra*) plus a per diem finance charge of $129.53 accruing from April 5, 2010. LaFarge also sought to recover, from Mr. Mills, $99,135.96 plus a per diem finance charge of $48.89 accruing from April 30, 2010 through the date of collection. On June 21, 2010, Mr. Mills filed an answer and

counterclaim alleging that Choctaw obtained no goods on the open credit account after December 22, 2009 because it had paid for all goods, from that date, by check tendered at the time of purchase. Accordingly, Mr. Mills alleged that no debts were incurred after the date he executed his guaranty. Mr. Mills further alleged that LaFarge had fraudulently induced him to sign the 2009 guaranty and that it was void *ab initio*.

In 2014, the parties filed cross-motions for summary judgment. LaFarge also moved for default judgment against Choctaw. On April 13, 2015, the trial court entered an order granting LaFarge's motion for default judgment against Choctaw and its motion for summary judgment against Mr. Mills. Specifically, the trial court concluded that Mr. Mills was a sophisticated businessman, the guaranty satisfied the Statute of Frauds, and LaFarge reasonably and properly applied Choctaw's payments of $79,890, which were made after December 2009, to its oldest outstanding debts. On May 19, 2015, the trial court entered a writ of inquiry order finding that LaFarge was entitled to $75,990.20 plus post-judgment interest at the statutory rate of 7.25%. In the May 19 order, the trial court further held that LaFarge was entitled to attorney's fees against the defendants and ordered the amount thereof to be reached through negotiation between the parties. The negotiations were ultimately unsuccessful, and, by order of October 28, 2016, the court awarded LaFarge $97,046.95 in attorney's fees against Mr. Mills. On January 13, 2017, the trial court entered an amended order on attorney's fees to correct the certificate of service. The substantive award of attorney's fees remained the same.

Mr. Mills filed a notice of appeal on February 13, 2017. On review, this Court determined that the April 13, 2015 and May 19, 2015 orders did not constitute a final judgment because the trial court had not adjudicated defendant Mr. Carrier. On remand, the trial court entered an order on March 2, 2018 granting LaFarge's voluntary dismissal without prejudice as to Carrier.

## II. Issues

The sole issue for review is whether the trial court erred in granting summary judgment in favor of LaFarge and denying Mr. Mills' motion for summary judgment.

## III. Standard of Review

We first note that while we are cognizant of the fact that Appellant represented himself throughout these proceedings, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." ***Hodges v. Tenn. Att'y Gen.***, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); ***Paehler v. Union Planters Nat'l Bank, Inc.***, 971 S.W.2d 393, 396 (Tenn. Ct. App.

1997). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003); *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

This case was decided on grant of summary judgment in favor of LaFarge. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013); *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Id.* (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)). For actions initiated on or after July 1, 2011, the standard of review for summary judgment is governed by Tennessee Code Annotated Section 20-16-101. The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

### IV. Analysis

In his appellate brief, Mr. Mills makes several arguments concerning whether the guaranty he signed is a valid and enforceable contract. We have reviewed Mr. Mills' arguments, including that the guaranty is ambiguous, that it does not satisfy the prima facie elements for a valid contract, and that it violates the Statute of Frauds. We are not persuaded that the guaranty is unenforceable. The document was undisputedly signed by Mr. Mills, whom the trial court found to be "a sophisticated person that understands personal guarantees and has been in the cement/concrete industry for decades." The

parties do not dispute this finding. The guaranty itself is not ambiguous, and we find no violation of the Statute of Frauds. Accordingly, we agree with the trial court's ruling that the guaranty is an enforceable contract.

From the remaining arguments and statements to this Court at oral argument, it is clear that the gravamen of the dispute between these parties involves LaFarge's application of payments made by Choctaw, after Mr. Mills executed the guaranty, i.e., after December 22, 2009, to debt Choctaw had accrued on its open credit account during the time Mr. Carrier's guaranty was in place, i.e., before December 22, 2009. The material facts concerning this question are not in dispute. In support of his motion for summary judgment, Mr. Mills filed the affidavit of LaFarge's Credit Manager, Paula Varteresian. In relevant part, Ms. Varteresian stated:

> 18. Prior to December 22, 2009, Choctaw owed LaFarge a principal balance in the amount of $266,557.14 and between December 22, 2009 and March 12, 2010, Choctaw purchased materials in the principal amount of $75,990.20 . . . .
> 19. Between December 22, 2009 and March 12, 2010, Choctaw paid a total of $79,890.94 to LaFarge, which was applied to past due invoices[, i.e., those invoices accrued prior to December 22, 2009 while Mr. Carrier's guaranty was in place.].
>
> ***
>
> 21. As of April 30, 2010, due and owing to LaFarge from Mills the sum of $75,990.20 plus finance charges which continue to accrue at the rate of $48.89 per diem from April 30, 2010.

In its response to Mr. Mills' statement of undisputed facts, LaFarge relies on the foregoing facts and cites to Ms. Varteresian's affidavit. Accordingly, for purposes of summary judgment, these facts are not in dispute.

From the undisputed facts, after Mr. Mills signed his guaranty, Choctaw received $75,990.20 in goods from LaFarge. Choctaw paid LaFarge $79,890.94. LaFarge applied the $79,890.94 to the $266,557.14 debt owed on Choctaw's open credit account, which debt was originally guaranteed by Mr. Carrier, who filed bankruptcy. Throughout these proceedings, Mr. Mills has maintained that LaFarge's application of the $79,890.94 to debt that Mr. Mills did not guarantee was error. Mr. Mills contends that the $79,890.94 that Choctaw paid after the date of Mr. Mills' guaranty should have been applied to the invoices for goods Choctaw received after December 22, 2009, which goods totaled $75,990.20. Accordingly, Mr. Mills contends that any amounts guaranteed by him were satisfied by the payment of the $79,890.20 and that he owes nothing further to LaFarge under the guaranty. LaFarge does not dispute that Choctaw made payments in excess of

- 5 -

the goods it received after December 22, 2009 but argues that it had a right to apply the $79,890.94 to Choctaw's oldest debt, i.e., the $266,557.14.

In its order granting LaFarge's motion for summary judgment, the trial court held, in relevant part:

> It is undisputed that Choctaw made $79,890.94 in payments to LaFarge after the [Mills'] Guaranty was signed. LaFarge properly applied these payments to the oldest open invoices on Choctaw's account and its application of payments made to Choctaw's oldest debts is typical and consistent with good business practice. Mr. Mills requested and was granted credit. The payments made were on the ongoing open account with LaFarge and LaFarge was entitled to apply them to the oldest debt.

In defending the trial court's determination that it properly applied the $79,890.94 to Choctaw's oldest debt, LaFarge relies on the case of ***Bussey v. Gant's Administrator and Heirs***, 29 Tenn. 238 (1859). From our review, ***Bussey*** does not support LaFarge's argument. In ***Bussey***, the debtor owed two different debts to the same person and tendered a "general payment" to the creditor without indicating which debt the debtor was paying. In addressing the issue of proper application of the payment, the Court held:

> The general rule in respect to the appropriation of payments is, that a debtor, owing different debts to the same person, has the right to apply the payment, at the time when made, to either; but, if he fails to do so, and the payment be general, the creditor may apply it; and where no appropriation is made by either party, the law will apply it according to the intrinsic justice and equity of the case.
>
> The right of the creditor to apply the payment is not unlimited. It is not always essential that there should have been an express declaration by the debtor, at the time of payment, to which of two accounts he intends the money to be applied. There are cases in which, though the payment be general, the creditor is not allowed to apply the payment to which account he pleases.
>
> The doctrine upon this subject, both of the English and American courts, seems to have been borrowed from the civil law. The rule of that law was, that where the application was not made by the parties, and where it became necessary to direct it by a court of justice, it ought to be applied to the debts which lie heaviest on the debtor, and which it concerned him most to discharge. . . . So a payment will be applied to a debt where the debtor has given a power or mortgage, rather than to a simple contract debt. In the case of ***Heyward v. Lomax*** (1 Vern. 24), it was held, that a general payment should be applied to a mortgage; "because," say the court, "it is natural to suppose that a man would rather elect to pay of the money for

which interest is to be paid, than the money due on account, for which no interest is payable."

***Bussey***, 29 Tenn. at 242-43 (some internal citations omitted). Contrary to LaFarge's reading of the case, ***Bussey*** does not stand for the proposition that general payments on competing debts should be applied first to the oldest debt; it stands for the proposition that the creditor should apply the payment to the debts "which lie heaviest on the debtor." ***Id***.

The Restatement (Second) of Contracts §260(2)(b)(ii) provides that, in applying a debtor's payments, preference should be given to "an unsecured or precarious debt rather than one that is secured or certain of payment" Importantly, Tennessee has not adopted the Restatement approach. Rather, in ***Blackmore v. Granbery***, 98 Tenn. 277, 39 S.W.2d 229 (1897), the Tennessee Supreme Court rejected the common law rule of giving preference to "the most precarious debt" and adopted the civil law rule, which states that a court should apply payments "to discharge debts for which a surety is bound, rather than to one where the debtor has given no surety." ***Id***. at 230. In other words, "application [of payment] ought to be made to the debt for which the debtor has given securities, rather than to those he owes singly." ***Id***. at 230-31 (quotation marks omitted). In the subsequent case of ***Southern Construction Co. v. Halliburton***, the Supreme Court reiterated its holding in ***Blackmore***, stating:

> The old doctrine of the "civil law" is invoked to the effect that, when the court makes an application of a payment by a debtor owing several debts to the same creditor, the application will be made to that debt for which the debtor has given a personal surety. The reason of this rule was that the debtor's honor was said to be more concerned in the payment of such a debt. This doctrine did not prevail at common law, but has been accepted in Tennessee to an extent. ***Bussey v. Gant's Adm'r***, 29 Tenn. (10 Humph.) 238, ***Blackmore v. Granbery***, 98 Tenn. 277, 39 S. W. 229.

***Southern Construction Co. v. Halliburton***, 149 Tenn. 319, 258 S.W. 409, 414-15 (1923). The existing law in Tennessee is perhaps more succinctly stated in 20 Tenn. Jur. *Payment* § 13, which provides, in relevant part, that "[p]ayments will be applied to discharge debts for which a surety is bound, rather than to one where the debtor has given no surety."

At oral argument before this Court, LaFarge's attorney conceded that, on the issuance of the stay in Mr. Carrier's bankruptcy case, Choctaw's outstanding debt of $266,557.14, which was secured by Mr. Carrier's personal guaranty, became unsecured debt. Therefore, the $75,990.20, which Choctaw accrued after Mr. Mills signed his guaranty, was the only debt for which the surety, i.e., Mr. Mills, was bound. For the reasons discussed above, the trial court's ruling that LaFarge properly applied the

$79,890.94 to the $266,557.14 debt is not in line with Tennessee law. Under existing Tennessee law, the $79,890.94 should have been applied first to the debt "for which a surety is bound," i.e., the $75,990.00. It is undisputed that, after Mr. Mills executed the guaranty, Choctaw made payments more than sufficient to cover the $75,990.00 in goods it received. Proper application of this amount to the guaranteed debt extinguishes that debt such that Mr. Mills' guaranty is satisfied. As such, Mr. Mills is entitled to summary judgment in his favor and is not liable for any interest, costs, or attorney's fees.

## V. Conclusion

For the following reasons, we reverse the trial court's order granting summary judgment in favor of LaFarge and its award of interest, attorney's fees, and costs in favor of LaFarge. We remand the case for entry of summary judgment in favor of Mr. Mills. Costs of this appeal are assessed to the Appellee, LaFarge North America, for which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE